𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

GORDON'S ADM'R V. DIRECTOR GENERAL OF RAILROADS
(SOUTHERN RAILWAY COMPANY).

November 18, 1920.

1.  RAILROADS—*Injuries to Persons on or Near Track—Contributory Negligence—Instructions.*—Even if there be some antecedent negligence by those operating a railway train, still if one who is in the full possession of his faculties steps upon a railroad track, in full view of and immediately in front of a rapidly approaching train, and thus meets death, his administrator cannot recover, because the decedent's own negligence is the proximate cause thereof. In the instant case there was evidence to justify this version of the fatality, and the defendant was entitled to have it presented to the jury in the instructions.

2.  RAILROADS—*Injuries to Persons on or Near Track—Passenger Alighting from Train—Contributory Negligence.*—Where a passenger in alighting from a north-bound train was forced to alight next to the south-bound track, she cannot be excused for remaining upon the south-bound track, or in such close proximity thereto, as to be struck by a passing train thereon, when it appears that she had ample opportunity to get to a position of safety as all the other passengers who alighted from the same train did on that occasion. While there may be circumstances under which a pedestrian is forced to occupy such a position of danger, and hence is not negligent, he cannot escape the imputation of negligence if he continues to occupy it when it is unnecessary to do so.

3.  RAILROADS—*Injuries to Persons on or Near Track—Last Clear Chance—Duty of Engineer.*—An engineer has a right to presume that pedestrians standing on or near the track apparently in the possession of their faculties will observe the approaching train, realize their danger, and take the necessary steps to avoid injury. At the same time, if the engineer having an unobstructed view of the track sees, or should have seen, such person, and it appears that the person on the track or dangerously near thereto, is oblivious of his danger, and will not save himself, then as soon as the engineer discovers that fact,

it is his duty to stop the train, if there is time, to give such warning signals as he can, and do all in his power to avoid the impending calamity.

4. INSTRUCTIONS—*Abstract Principles—Relation to Evidence.*—Instructions should relate to the specific evidence in the case on trial, and abstract propositions of law, which can be readily applied by the trained legal mind, do not aid, and frequently mystify, the jury. In the instant case the instruction in question, while announcing a correct abstract legal doctrine, by its reference to other persons who might have been present and injured at the time of the accident would probably have diverted the minds of the jury from the case on trial and the precise issue which was submitted to them, and the trial court committed no error in refusing to give it.

5. RAILROADS—*Injuries to Persons on or Near Track—Last Clear Chance—Instructions.*—In an action by an administrator for the death of his decedent, who was killed by a train of defendant when standing on or near the track, after having alighted from a train on an adjoining track, an instruction offered by plaintiff directed the attention of the jury to the evidence introduced by the plaintiff, tending to prove that no warning signals of the approach of the train were given, and properly presented the issue of last clear chance which the jury should have been called upon to determine. This instruction, or its equivalent, should have been given, and it was error to refuse it without giving some other instruction which embodied the last clear chance doctrine as applicable to the case. And it follows that it was also harmful to the plaintiff to give the instructions offered by the defendant which failed to recognize the right of the plaintiff to have the jury pass upon the evidence in support of the theory of last clear chance.

6. RAILROADS—*Injuries to Persons on or Near Track—Last Clear Chance Doctrine.*—Notwithstanding the negligence of the plaintiff, however clear it may be, still, after his peril is, or should have been, discovered, it is the duty of the defendant to use reasonable care to employ all the available means at hand to avoid personal injury or the destruction of life, and if the agents of the defendant have clearly had this opportunity, and failed to embrace it, then their negligence is the latest negligence and the supervening proximate cause of the injury.

7. RAILROADS—*Injuries to Persons on or Near Track—Last Clear Chance Doctrine—Duty of Engineer.*—Under the last clear chance doctrine in order to justify the imputation of negligence to the engineer, it is necessary to show that after he

discovered, or should have discovered, the pedestrian's obliviousness to his own peril, he, the engineer, had the clear opportunity or chance to avoid the injury by the use of the available means, and that he failed to exercise ordinary care to do so. This decisive fact should be shown, like any other necessary facts, by a preponderance of the evidence; it should not be lightly inferred merely because of the disaster, or from unconvincing testimony.

Error to a judgment of the Circuit Court of Nelson county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Caskie & Caskie* and *Volney E. Howard,* for the plaintiff in error.

*J. T. Coleman, Jr.,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff in error complains of a judgment in favor of the defendant in error in an action for the recovery of damages for the death of Fannie Gordon.

The cause of action arose at Shipman, a station on the Southern Railway, at a highway crossing immediately at and alongside of the station building. There were three railroad tracks running north and south, namely, the house track, located at the east end of and immediately adjacent to the depot building; next to the east was the southbound track, upon which the accident occurred, over which all southbound trains were run; then east of that was the northbound track, over which all northbound trains were run. The depot was set back from the tracks on the public

road, but was located at the northwest corner of the cross- ing, with the house track on its east side and the public highway on the south side. There was no space provided for persons lawfully at the station, except the building, the public road and the railroad right of way. All northbound local passenger trains, when stopped at this station to dis- charge and receive passengers, stood across the highway crossing, and no provision had been made on the east side of the northbound track for discharging or receiving pas- sengers at this place, but they were required to alight from and board the cars on the west side of the train, and thus to use and occupy the ground covered by the southbound track, the house track, the highway crossing, and such other space as the station and right of way might afford; so that incoming passengers, whose ultimate destination was on the east side of the railroad were compelled to wait until after the northbound train had finished discharging and receiving passengers and departed.

The plaintiff's intestate, Fannie Gordon, alighted from the local northbound passenger train from Lynchburg on December 24, 1918, in the usual way, on the west side of the train adjacent to the southbound track, and was forced to wait for that train to clear the road crossing so as to al- low her to go to her home at Wood's Hotel, immediately at the station, on the east side of and about forty feet from the railway track. She had been standing at the place indi- cated, or thereabouts, waiting for the northbound train to depart, and after it left the station and opened the cross- ing, when proceeding or about to proceed, she was struck and killed by a train running south on the southbound track.

The contention upon which the plaintiff bases his claim to recover is presented in two aspects: First, that his in- testate was guilty of no contributory negligence, because it had been the custom for passengers to alight in the space indicated; that it had also been customary for southbound

trains to come to a stop until the northbound train had left the station, and there was an applicable rule on the subject reading thus: "Trains must use caution when passing a train receiving or discharging passengers at a station, and must not pass between it and the platform at which the passengers are being received or discharged." Second, that even if the deceased was guilty of contributory negligence, the southbound train failed to give the statutory crossing signal, and that she was standing so close to the rails of the southbound track upon which there was an unobstructed view for a long distance, say for a mile or more, that it was the duty of the agents of the defendant to observe that she was oblivious of her position of danger, to do all in their power to avoid injuring her, and the doctrine generally spoken of as the last clear chance, or discovered peril, is invoked.

On the other hand, the company claims exemption from liability because it avers that Mrs. Gordon stepped from a safe place suddenly in front of the train, in execution of her purpose to cross the track; that all the necessary warning signals had been given; and that the engineer had no notice or reason to suspect she would attempt thus suddenly to cross the track until it was too late to stop the train.

The trial court took the defendant's view, and so instructed the jury. The exceptions of the plaintiff in error relate to the giving and refusal of instructions, based upon this view.

[1, 2] Taking up first the contention of the defendant company, we have no doubt whatever that if the facts are as presented by the defendant's witnesses, it cannot be questioned that Mrs. Gordon is herself responsible for her sudden and deplorable death. Certainly there is no doubt as to this conclusion, which is supported by reason and authority. Even if there be some antecedent negligence by those operating a railway train, still if one who is in the

full possession of his faculties steps upon a railroad track, in full view of and immediately in front of a rapidly approaching train, and thus meets death, his administrator cannot recover, because the decedent's own negligence is the proximate cause thereof. There is evidence in this case to justify this version of the fatality, and the defendant was entitled to have it presented to the jury in the instructions. We cannot accede to the contention for the plaintiff, that, because in alighting from the northbound train Mrs. Gordon was forced to alight next to the southbound track, therefore she can be excused for remaining upon the southbound track, or in such close proximity thereto, as to be struck by a passing train thereon, when it appears that she had ample opportunity to get to a position of safety as all the other passengers who alighted from the same train did on this occasion. While there may be circumstances under which a pedestrian is forced to occupy such a position of danger, and hence is not negligent, he cannot. escape the imputation of negligence if he continues to occupy it when it is unnecessary to do so. It is but the work of an instant for a pedestrian to see and to realize his danger under such circumstances, and requires only a step or two to reach a place of safety. So that the first contention of the plaintiff—that is, that Mrs. Gordon was guilty of no negligence, or that the jury might determine from the evidence whether she was or was not negligent, is unsound. Her negligence is manifest. The trial court properly so instructed the jury and it is not necessary to cite authority therefor to support the ruling, for it is firmly based upon justice and right reason; and we believe that it is everywhere accepted.

The court, however, refused to grant any instructions based upon the last clear chance doctrine. There is the usual sharp conflict in the testimony, but that upon which the plaintiff relies and upon which this view of the case is

based, may be thus summarized: Mrs. Gordon, while waiting for the northbound train to clear the crossing, met Mr. Milton Kidd, and they had a conversation relating to a sum of money which Kidd owed and paid her on that occasion, and while still conversing there, according to the plaintiff's testimony, Kidd standing within three and a half feet of the west rail of the southbound track, and Mrs. Gordon at least a foot and a half closer to that rail and not looking in the direction from which the southbound train was approaching, and just as, or after, the northbound train had cleared the crossing, was struck and instantly killed. It is not clear even from the plaintiff's testimony, whether she still occupied the same position, and had turned to start across the track, or had actually started across it at that time.

[3] Now it must be remembered that there was an unobstructed view, and that if this was Mrs. Gordon's position, it should have been apparent to the engineer. While it is true (and we do not mean to weaken or in the slightest degree to discredit the Virginia cases on this subject) that under such circumstances the engineer has the right to presume that pedestrians apparently in the possession of their faculties will observe the approaching train, realize their danger and take the necessary steps to avoid injury, at the same time if it appears that the person on the track, or dangerously near thereto, is oblivious of his danger and will not save himself, then as soon as the engineer discovers that fact, it is his duty to stop the train, if there is time, to give such warning signals as he can, and to do all in his power to avoid the impending calamity.

[4] The fourth instruction offered for the plaintiff reads thus: "The court further instructs the jury that, independently of the duty of the defendant to sound the crossing signals for the highway crossing at Shipman depot, as set forth in instruction No. 1, it was the duty of the defendant

and of his agents and servants who were operating the said southbound train, on approaching said depot at Shipman, after coming in sight thereof, to exercise ordinary care to keep a reasonable lookout ahead for the purpose of ascertaining, if practicable, the situation and conditions then existing at said depot for the purpose of avoiding unnecessary injury to persons who might be there present and in situations of danger of injury from said train in case they should be unaware of its approach; and if the situation, circumstances and surroundings then existing, as they were seen by said agents and servants to be, or as they could and would have known them to be by the exercise of reasonable care and caution on their part, were such as should have caused them, as men of ordinary prudence and caution, to know or to expect, or to reasonably anticipate, that injury to persons at or about said depot might result if they failed to give warning of the approach of said train, then it was their duty to exercise reasonable care and diligence to give reasonable and timely warning of the approach thereof, by sounding the whistle or ringing the bell of the engine, or by both if obviously necessary, or by some other practicable and reasonably adequate means, in order to avoid the danger of injuring them, and in order that the persons themselves might have warning of the train's approach and themselves look out for their own safety and avoid being injured by said train; and the failure of said agents and servants to perform either of said duties would be negligence imputable to the defendant."

This instruction doubtless announces a correct abstract legal doctrine; but instructions should relate to the specific evidence in the case on trial, and abstract propositions of law, which can be readily applied by the trained legal mind, do not aid and frequently mystify the jury. They are more likely to confuse and mislead than to help them to a right conclusion. The references in this instruction to other

55

persons who might have been present and injured would probably have diverted the minds of the jury from the case on trial and the precise issue which was submitted to them, and we think the court committed no error in refusing to give it.

[5] Instruction No. 5, offered for the plaintiff and refused, reads thus: "The court further instructs the jury that although the jury may believe from the evidence that the decedent, Fannie Gordon, was guilty of negligence in failing to observe the approach of said southbound train and in being in position to be struck by it, if the jury shall also believe from the evidence that she did not in fact see or know of the presence and approach of said train, and if they further believe from the evidence that the said agents and servants of the defendant then operating said train should, as ordinarily prudent and careful men, have known, expected or anticipated that she or other persons might be present at said depot and unaware of the approach of said train and might be, in a situation to be struck by said train if not warned of the approach thereof, and if the jury shall further believe from the evidence that said servants and agents negligently failed to exercise reasonable care and caution to keep a lookout for the decedent or other persons whom said agents and servants should then have reasonably expected to be there in positions of danger and unaware of the approach of said train, and if the jury shall further believe from the evidence that said agents and servants, after they knew, or by the exercise of ordinary and reasonable care they should have known or should have anticipated danger of injury to the decedent or other persons then at said depot in ignorance of its approach, if said train should be run over said track at that point at that time without giving warning of its approach by signalling with whistle and bell, and that said agents and servants negligently failed to signal the

approach thereof in any reasonable manner, by the use of the whistle or bell or otherwise, and that by reason of said negligence the decedent was struck and killed, and if they further believe from the evidence that if said agents and servants had not been guilty of said negligence in failing to keep a lookout ahead, as aforesaid, or in failing to signal the approach of said train, as aforesaid, the injury and death of the decedent would have been thereby avoided, notwithstanding her own negligence, they should find for the plaintiff."

This instruction does direct the attention of the jury to the evidence introduced by the plaintiff tending to prove that no warning signals of the approach of the train were given, and properly presents the issue which they should have been called upon to determine. This instruction, or its equivalent, should have been given, and it was error to refuse it without giving some other instruction which embodied the last clear chance doctrine as applicable to Mrs. Gordon and the specific evidence in the case.

It follows that it was also harmful to the plaintiff and erroneous to give the instructions offered by the defendant which failed to recognize the right of the plaintiff to have the jury pass upon the evidence submitted in support of the contention that the proximate cause of the accident was the actionable negligence on the part of the company's agents in charge of the engine in failing to observe Mrs. Gordon, her obliviousness to her danger, and in failing to give her the proper warning signals.

[6] Among the recent cases that have discussed the doctrine of the last clear chance are, *Wilson's Adm'x* v. *Va. Portland Ry. Co.*, 122 Va. 160, 94 S. E. 347; *Wilmouth's Adm'r* v. *Southern Ry. Co.*, 125 Va. 511, 99 S. E. 665; *Roaring Fork R. Co.* v. *Ledford's Adm'r*, 126 Va. 97, 101 S. E. 141; *Gunter's Adm'r* v. *Southern Ry. Co.*, 126 Va. 565, 101 S. E. 885. It is hardly necessary again to review the au-

thorities, or to undertake to say more than is necessary for the determination of the case in judgment. The question is one of remote and proximate cause, and notwithstanding the negligence of the plaintiff, however clear it may be, still, after his peril is or should have been discovered, it is the duty of the defendant to use reasonable care to employ all the available means at hand to avoid personal injury or the destruction of life, and if the agents of the defendant have clearly had this opportunity, and failed to embrace it, then their negligence is the latest negligence and the supervening proximate cause of the injury.

If Mrs. Gordon was standing in an apparently safe place, and suddenly changed it and undertook to cross the railroad track in front of the rapidly approaching train without looking or listening for it, then she is the author of her own misfortune, her negligence is the supervening proximate cause, and there is no right to recover in this action. If, on the contrary, she stood in full view of the approaching train and hence in view of the engineer who was operating the engine, and on or so near to the track as to be obviously in danger, of which she was apparently oblivious, and the engineer saw her, or by the exercise of ordinary care should have seen and realized her danger, and saved her from injury, then his failure to exercise such care was negligence and was the proximate cause of the accident. The evidence was conflicting and the plaintiff was entitled to have the jury pass upon the testimony which tended to support the claim that by the exercise of ordinary care the engineer could have avoided the fatal event.

[7] It should be fully realized that a most difficult problem faces an engineer in such a crisis, and it must be remembered and emphasized that he has the right to assume that persons apparently in full possession of their faculties will not continue to be negligent and hence will

not remain in the position of danger in which they have so negligently placed themselves, for they almost invariably step to a place of safety, still under the law as interpreted by the courts, the engineer must, as best he can, at the proper time determine whether the person on the track is oblivious of danger, and hence unlikely to save himself. It is such a perplexing crisis for an engineer that juries having such questions submitted to them should carefully consider the difficulties of the problem as it appeared to him before the casualty, and not as it appears to them afterwards. They should not stigmatize him as negligently taking a chance, with the life of a fellow being at stake, when he testifies that he has done his best to avoid injuring the person who was himself manifestly negligent, unless by the weight of the evidence such a conclusion is justified. The doctrine is humane, but there is grave danger that sometimes it may be inhumanely or negligently applied. It is necessary, in order to justify the imputation of such negligence to the engineer, to show that after he discovered, or should have discovered, the pedestrian's obliviousness to his own peril, because in some way indicated, that then— that is, after such discovery—he, the engineer, had the clear opportunity or chance to avoid the injury by the use of the available means, and that he failed to exercise ordinary care to do so. This decisive fact should be shown like any other necessary fact, by a preponderance of the evidence; it should not be lightly inferred merely because of the disaster, or from unconvincing testimony.

We think that the court rightly refused to submit to the jury the question whether or not Mrs. Gordon was negligent, because her negligence is manifest; but it erred in failing, by proper instructions, to submit to the jury the question which is presented by instruction No. 5, which was refused. For this error the judgment will be reversed and the case remanded for a new trial.

*Reversed.*