Syllabus.

## Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY AND WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS, V. CORA ARRINGTON, ADMINISTRATRIX OF G. C. ARRINGTON, DECEASED.

November 17, 1921.

Absent, Burks, J.

1.  RAILROADS—*Government Control—Liability of Companies—Dismissal of Action Against Company.*—By the establishment of the Railroad Administration and subsequent orders of the Director General, the carrier companies were completely separated from the control and management of their systems, and no liability arising out of the operation of these systems was imposed upon the owner companies.

2.  RAILROADS—*Government Control—Liability of Companies—Parties—Action Against Company and Director General—Dismissal of Action Against Company.*—Where an action was brought by an administratrix against a railroad company and the Director General of Railroads, for the killing of her decedent by a train, while the system was being operated by the Director General, the court should have entertained the motion of the railroad company to dismiss the action against it, yet under Code of 1919, section 6365, this does not affect the liability of the Director General.

3.  WITNESSES—*Assumption that a Witness has made a Statement which he has not made—Cross-Examination.*—It is not fair, even upon cross-examination, for attorneys to assume that a witness has made a statement which he has not made, and such a practice should be firmly restrained by the trial courts.

4.  WITNESSES—*Assumption that a Witness has made a Statement which he has not made—Cross-Examination—Harmless Error.*—Although counsel by a question should not impute to a witness a statement which he has never made, yet where the witness in answer to such a question denied making such statement, and

the court immediately reversed its ruling and sustained the objection to the question, the error so quickly and completely corrected was not prejudicial.

5. RAILROADS—*Last Clear Chance—Licensee Working Near Track.*—Plaintiff's decedent was a licensee engaged in grading work on the railroad. The trainmen had notice to operate trains at that point with caution. Before the occurrence of the casualty the fireman appreciated the danger of decedent and his unconsciousness thereof and notified the engineman of the fact, and according to the testimony of many witnesses, notwithstanding the discovered peril of the deceased, the train was not brought under control, and no warning signal was given until it was too late. The engineman testified that he was within fifty feet of the deceased when he first saw, or could have seen, him and that he did everything that he could do to save him.

   *Held:* That the issue of fact under the last clear chance doctrine was for the jury, and their verdict in favor of plaintiff was not contrary to the law and the evidence.

Error to a judgment of the Circuit Court of Montgomery county in an action of trespass on the case. Judgment for plaintiff. Defendants assign error.

*Reversed as to Norfolk and Western Railway Company.*
*Affirmed as to Director General of Railroads.*

The opinion states the case.

*Jordan, Roop & Sowder, H. J. Phlegar* and *F. M. Rivinus,* for the plaintiffs in error.

*Harless & Calhoun,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

G. C. Arrington was killed by a train of the Norfolk and Western Railway Company in August, 1918, while the sys-

tem was being operated by the Director-General of Railroads. His administratrix sued both the company and the Director-General of Railroads, and recovered against both. Both defendants complain of the judgment, and three of the errors assigned are relied upon in this court.

[1]  1. The first assignment is that the court erred in overruling the motion of the Norfolk and Western Railway Company to dismiss the action against it, relying upon general orders Nos. 50 and 50-A, United States Railway Administration.

The question thus raised has been much discussed in the State and federal courts recently. It is unnecessary for us to treat it at any length, because by a recent decision of the Supreme Court of the United States, handed down June 1, 1921, the question must be regarded as definitely settled. *Missouri Pac. R. Co.* v. *Ault,* 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. —.

It is there said, with reference to this identical point: "The company is clearly not answerable in the present action if the ordinary principles of common law liability are to be applied. The railroad administration established by the President in December, 1917, did not exercise its control through supervision of the owner-companies, but by means of a director-general, through 'one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing.' *Northern Pac. R. Co.* v. *North Dakota,* 250 U. S. 135, 148, 63 L. Ed. 897, 902, P. U. R. 1919D, 706, 39 Sup. Ct. 502. This authority was confirmed by the federal control act of March 21, 1918, chap. 25, 40 Stat. at L. 451, and the ensuing proclamation of March 29, 1918, 40 Stat. at L. 1763. By the establishment of the railroad administration and subsequent orders of the director-general, the carrier companies were completely separated

from the control and management of their systems. Managing officials were 'required to sever their relations with the particular companies and to become exclusive representatives of the United States Railroad Administration.' U. S. R. R. Adm. Bulletin No. 4, pp. 113, 114, 313. The railway employees were under its direction, and were in no way controlled by their former employers. See Bulletin No. 4, p. 168, secs. 5, 198, *et seq.,* 330 *et seq.* It is obvious, therefore, that no liability arising out of the operation of these systems was imposed by the common law upon the owner-companies, as their interest in and control over the systems were completely suspended." The opinion handed down by Mr. Justice Brandeis proceeds with convincing reasoning to show the soundness of the conclusion that the motion of the Missouri Pacific Railroad Company in that case, to dismiss the action against it, should have been sustained.

The very great weight of authority in the inferior federal courts, as well as in the State courts, supports this view, and the question is no longer open.

[2] The motion of the Norfolk and Western Railway Company should have been sustained, because the injury to the plaintiff's intestate occurred while the system was being operated by the director-general, and the court committed error in overruling it. This conclusion, however, does not affect the liability of the director-general of railroads (Code 1919, sec. 6365), and we will proceed to consider the other assignments of error.

2. On cross-examination of the engineman, Douthat, counsel for the plaintiff asked the following question:

"Q. Then you did not blow it until you got to the straight track, although you acknowledge the man was oblivious to his danger and standing on the westbound track?"

To this question the attorneys for the defendants objected, the objection was overruled and exception duly taken, but immediately thereafter the court ruled that the question was improper, and sustained the objection thereto.

[3, 4] As the engineer had not acknowledged that the deceased was oblivious to his danger, the question was manifestly improper. There was, however, evidence in the case from the fireman and others that the deceased appeared to be oblivious to his danger for an appreciable time before he was struck. It is, however, not fair, even upon cross-examination, for attorneys to assume that a witness has made a statement which he has not made, and such a practice should be firmly restrained by the trial courts. Inasmuch as in this case the court immediately reversed its ruling, we find nothing in the occurrence which would justify a reversal of this case. The jury had heard the evidence of the witness, and knew that he had not acknowledged that the deceased was oblivious of his danger, indeed the answer to this objectionable question by the witness himself was that he had no such knowledge, and then the prompt reversal and the ruling by the trial judge emphasized to the jury the fact that the witness had not so testified. It is thus perfectly clear that the error so quickly and completely corrected was not prejudicial; indeed, the incident in its close was altogether beneficial to the defendants, for the fact that the engineer claimed that he had no such knowledge was made obvious.

3. The other assignment of error here relied upon is that the court erred in overruling the motion for a new trial upon the ground that the verdict was contrary to the law and the evidence. The determination of this question depends upon whether under the evidence the defendant could be held liable under the doctrine of the last clear chance, or discovered peril.

[5] There were numerous instructions given at the instance of the litigants. It is conceded in the briefs that the jury were fully and properly instructed, and of the eight instructions given at the instance of the defendant, six recognized that doctrine as applicable to the evidence in this case. Under the evidence, this question was fairly referable to the jury, and of this there can be no doubt whatever. The unquestioned facts are that the deceased was a licensee, being a servant of an independent contractor who was engaged in grading work on the railway line. He was a foreman, having charge of a large number of hands. The line was double-tracked at that point, and after attending to some of his duties on the south of the east-bound track, he recrossed that track and nearly crossed the west-bound track, but stood on the end of one of the ties. A train going east passed about that time and he was struck by a train going west on the west-bound track while thus standing. The defendants had knowledge of the fact that the grading work was proceeding, and had issued an order that the trains were to go slowly at that point. The fireman on the train which struck the deceased first observed him when 431 feet away, thereafter noted his change of position, saw that he was looking west with his back toward the approaching west-bound train, and perceived that he was apparently oblivious of his danger. The fireman promptly notified the engineman, who, according to his own testimony, then looked out of the window on his side in order to satisfy himself as to the facts. As the engineman was on the outside of the curve on which the train was then running, he did not see the deceased. Then as the train rounded the curve he could see for a distance of 214 feet on a straight track, but inasmuch as the length of the engine was ahead, it was within 164 feet at the time he might with due care have seen the deceased and realized his peril. The engine-

man testifies, however, that he was within fifty feet of the deceased when he first saw, or could have seen him, and that he did everything that could have been done to save him by endeavoring to slacken the speed of the train and by sounding danger signals. There is, however, abundant testimony to the effect that the speed of the train was not slackened until just at the instant of the casualty, or thereafter, and that no warning whistle was sounded until immediately before the deceased was struck. The admitted facts that the trainmen had notice to operate the trains at that point with caution, that before the occurrence of the casualty the fireman appreciated the danger and notified the engineman of the fact, and that according to the testimony of many witnesses, notwithstanding the discovered peril of the deceased, the train was not brought under control, and that no warning signal was given until it was too late, makes a case in which the issue of fact must be submitted to a jury. The instructions, which are unobjectionable, show that this was the view of the defendants at the time the case was tried. If the jury had ignored all of the physical facts and the testimony of all of the other witnesses except that of the engineman, they might have found in favor of the defendant; but they also had the right to discredit his testimony and to accept the weight of the evidence to the effect that under the doctrine of discovered peril the plaintiff was entitled to recover, notwithstanding the contributory negligence of the deceased.

Among the recent cases in this State which apply the doctrine are *Wilson's Adm'x* v. *Va. Portland Ry. Co.,* 122 Va. 160, 94 S. E. 347; *Roaring Fork R. Co.* v. *Ledford,* 126 Va. 97, 101 S. E. 141, 871; *Gunter's Adm'r* v. *Southern Ry. Co.,* 126 Va. 585, 101 S. E. 885; *Gordon's Adm'r* v. *Director-General,* 128 Va. 426, 104 S. E. 796.

*Reversed as to Norfolk and Western Railway Company.*
*Affirmed as to Director-General of Railroads.*