# Richmond.

## DIRECTOR GENERAL OF RAILROADS (SOUTHERN RAIL-WAY COMPANY) v. CRAWFORD GORDON, SR., ADM'R OF FANNIE GORDON, DECEASED.

### November 16, 1922.

1. RAILROADS—*Injuries on or near Track—Custom of People to Occupy Tracks at Station after Arrival of Train—Case at Bar.*—Plaintiff's decedent was killed by a south bound train after she had alighted from a north bound passenger train and placed herself on or near the south bound track. In an action for damages for her death, it was proper for the jury to know the conditions, which usually existed at the station after the arrival of the north bound passenger train, necessarily within the knowledge and acquiescence of the defendant, and to take the same into consideration in determining whether the engineer of the south bound train was negligent in failing to keep a lookout ahead and in failing to signal the approach of the train when he knew, or ought to have known, such conditions and surroundings would likely be found upon his arrival there. Whether the engineer was negligent depended upon the conditions and circumstances surrounding him at the time. What would be ordinary care in one case might be absolute negligence in another.

2. RAILROADS—*Injuries on or near Track—Custom of People to Occupy Tracks at Station after Arrival of Train—Case at Bar.*—In an action for wrongful death, where plaintiff's decedent was killed by a south bound train after she had alighted from a north bound passenger train and placed herself on or near the south bound track, evidence was admissible as to the custom of people standing on or between the tracks while the north bound train was standing at the station, as to which side of the north bound train the passengers were discharged at the time of the accident, as to the custom of people getting off the north bound train walking down the track and waiting for the train to pull out, and as to which side of the train plaintiff's decedent got off, where the engineer of the south bound train testified that it was his duty, if the north bound train had not cleared, to stop his train before passing the station.

3. RAILROADS—*Injuries on or near Track—Evidence—Objections—Argument of Counsel.*—Plaintiff's decedent was killed by a train of defendant railroad. On the trial one of defendant's witnesses upon cross-exami-

nation was asked the following question: "Did it sound like that blowing had Christmas in its bones?" referring to the whistle of the engine. To which witness replied: "It sounded like it had about a gallon in its bones."

*Held:* That as defendant did not object to this testimony, plaintiff's counsel had a right to refer to it in argument, and that his characterization of the engineer's conduct as "hilarious" was not prejudicial error.

4. WORDS AND PHRASES—*"Hilarious."*—"Hilarious" is defined as "mirthful; noisy; merry;" and "hilarity" as "boisterous mirth; merriment."

5. HEARSAY EVIDENCE—*Witnesses—Testimony of Witness at Former Trial—Agreement of Counsel.*—In an action for death by wrongful act, plaintiff, the administrator of the decedent, had testified at a previous trial, but was absent at the last trial. Counsel for plaintiff anticipating his absence, obtained from defendant's counsel his consent to use the stenographic report of plaintiff's evidence given at the former trial, but there was no agreement that it should be used, and there was no intimation from defendant's counsel that defendant desired to use it. Plaintiff's counsel did not introduce this evidence, and thereupon defendant's counsel moved for permission to introduce this evidence in behalf of defendant, and to permit the defendant to introduce a witness and allow him to testify as to what plaintiff stated upon the witness stand at the former trial, which motion the court overruled.

*Held:* No error.

6. HEARSAY EVIDENCE—*Witnesses—Testimony of Witness at Former Trial.*—In civil actions, under certain circumstances, a party may be permitted to prove what a witness stated at a previous trial between the same parties and upon the same issues.

7. HEARSAY EVIDENCE—*Witnesses—Testimony of Witness at Former Trial.*—In order that what a witness testified to at a previous trial may be admissible, the court must be satisfied (1) that the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced.

8. HEARSAY EVIDENCE—*Witnesses—Testimony of Witness at Former Trial—Reason for Failure to Produce Witness.*—Before a witness' testimony at a former trial is admissible the court must be satisfied that it is impossible, fairly speaking, for the person offering the evidence to produce the living witness or take his deposition.

9. HEARSAY EVIDENCE—*Witnesses—Testimony of Witness at Former Trial—Case at Bar.*—In the instant case defendant sought to introduce the written evidence of plaintiff at a former trial or to prove his state-

ments at that trial by a witness. Plaintiff was sick and not in the State, but was well enough to give his deposition. Defendant's counsel never intimated that he wished to use plaintiff's testimony at the former trial or that he wished to take his deposition. Code of 1919, sections 6226 and 6231, provides for depositions of witnesses residing out of the State in a civil case at law.

*Held:* That the trial court was plainly right in refusing to admit this evidence.

10. DECLARATIONS AND ADMISSIONS—*Character in which Declarations are Made—Representative and Personal Capacities.*—Where the party sues in a representative capacity—*i. e.*, as trustee, executor, administrator, or the like—the representative is distinct from the ordinary capacity, and only admissions made in the former quality are receivable. Conversely, his admissions as executor or the like would not be receivable against him as a party in his personal capacity. A guardian, so far as his powers place him in a representative capacity, is subject to the same rules.

11. ASSIGNMENT OF ERROR—*Instructions Pointing out Error.*—An assignment of error to the action of the trial court in giving an instruction will not be considered where it failed to point out any specific error in the instruction.

12. APPEAL AND ERROR—*Successive Appeals—Law of the Case—Instructions.* —An instruction complained of was an exact copy of one given at a previous trial, and passed upon by the Supreme Court of Appeals. As to this instruction, the appellant, practically speaking, was asking the Supreme Court of Appeals to reverse its ruling made on the same question on the former appeal.

*Held:* That this could not be done. The decision of the Supreme Court of Appeals on the former appeal was binding on the trial court, and right or wrong is decisive in the Supreme Court of Appeals on the second appeal.

13. APPEAL AND ERROR—*Successive Appeals—Law of the Case.*—Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purposes of that case, though only for that case, the decision on the first appeal is the law.

14. APPEAL AND ERROR—*Instructions—Repetition—Not Error to Refuse Instructions where Instructions Given Cover the Case.*—Where the instructions given on the motion of the plaintiff and on the motion of the defendant, respectively, fairly and sufficiently instruct the jury on the law applicable to the case, there was no reversible error in refusing other instructions asked for by the appellant.

15. NEGLIGENCE—*Last Clear Chance—Continuing Negligence—Proximate and Remote Cause—Case at Bar.*—In the instant case, an action for death

by wrongful act, plaintiff based his right to recover solely on the doctrine of the last clear chance. In doing so he admitted that his intestate was, in the first instance, guilty of negligence. Notwithstanding that fact, the question is not one of concurrent or continuing negligence on the part of plaintiff's intestate in negligently continuing to stand in a place of danger, but rather one of remote and proximate cause. The defendant knowing her peril and that she was unconscious of it, and its agents and servants having the opportunity to avoid the injury and failing to do so, their negligence, coming after that of the plaintiff's intestate, became the proximate cause of the injury.

16. Railroads—*Injuries on or near Track—Last Clear Chance—Question for Jury—Evidence Sufficient to Support Verdict.*—In an action for death by wrongful act, plaintiff relied on the doctrine of the last clear chance. On the questions of the defendant's negligence, of the decedents's position of peril, her unconsciousness of her danger and the defendant's knowledge thereof, and the defendant's opportunity and failure to save her from death, there was a hopeless conflict in the evidence. The credibility of the witnesses and the weight of evidence were questions for the jury, and the trial court having entered judgment upon the verdict for plaintiff, it could not be said that the judgment or verdict was plainly wrong or without evidence to support it.

Error to a judgment of the Circuit Court of Nelson county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiff in error.

*Caskie & Caskie* and *Volney E. Howard,* for the defendant in error.

West, J., delivered the opinion of the court.

This action was instituted to recover damages for the death of Fannie Gordon, who was killed by one of the defendant's trains on December 24, 1918, at Shipman, Nelson county, Virginia. The case was tried

three times. On the first trial there was a verdict and judgment for the defendant. The plaintiff appealed and the judgment was reversed for error in instructions and the case remanded for a new trial. The opinion of the court is reported under the style of *Gordon's Adm'r v. Director General of Railroads,* in 128 Va. 426, 104 S. E. 796. On the second trial there was a hung jury, and upon the third trial there was a verdict and judgment for the plaintiff for $5,000, and that judgment is now under review. For convenience we will refer to the parties, plaintiff and defendant, with reference to their respective positions in the trial court.

.The facts shown in evidence on the first and third trials are not materially different. After the decision in this court, *supra,* the plaintiff abandoned the first count of the declaration and rested his case solely on the second count, which states a case under the doctrine of the "last clear chance." On the third trial the plaintiff contended that Mrs. Fannie Gordon, who had a few minutes before alighted from the north bound passenger train No. 44, placed herself on or near to the south bound main line track, at Shipman station, as to be injured by a passing train; that her position could have been seen by the engineer, and that the engineer should have seen that Mrs. Gordon was oblivious to her danger in time for him to have avoided the accident by stopping the train or sounding some alarm. The defendant contended that the engineer was guilty of no negligence; that Fannie Gordon was in a place of safety from which she suddenly proceeded directly in front of a rapidly approaching train and was the author of her own misfortune.

The defendant relied on ten assignments of error.

[1, 2] The third assignment relates to the action of the court in permitting the plaintiff's witness, T. H.

McGinnis, to testify as to the custom and habits of people occupying the railroad tracks and space between the tracks while north bound train No. 44 was standing at the depot; and allowing the same witness to testify as to on which side of the train passengers were discharged at the time of the accident.

The fourth assignment involves the action of the court in permitting the same witness to testify that persons living at Wood's hotel generally walked down the track and waited until the train pulled out, and that such was the habit of the people getting off of train No. 44.

The fifth assignment complains of the action of the court in overruling the motion of the defendant to exclude all evidence introduced as to the custom of passenger trains, going south, to stop until passenger trains, going north, had started from the station, and the action of the court in overruling the defendant's motion to exclude the evidence as to the side of the train that Mrs. Gordon got off of, and the evidence as to where passengers generally got off of the train prior to and subsequent to the accident.

It was proper for the jury to know the conditions, which usually existed at the station after the arrival of north bound passenger train No. 44, necessarily within the knowledge and acquiescence of the defendant, and to take the same into consideration in determining whether the engineer of No. 35, south bound, was negligent in failing to keep a lookout ahead and in failing to signal the approach of his train when he knew, or ought to have known, such conditions and surroundings would likely be found upon his arrival there. Whether the engineer was negligent depended upon the conditions and circumstances surrounding him at the time. What would be ordinary care in one case might be absolute negligence in another.

After plaintiff's witnesses had testified that No. 44 had not cleared the crossing when No. 35 came in and killed Mrs. Gordon, the engineer of No. 35 testified that it was his duty, if No. 44 had not cleared, to stop his train before passing the station. The defendant was not prejudiced by the rulings of the court complained of, and these three assignments are without merit.

The sixth assignment complains that the court erred in allowing defendant's witness, J. H. Moore, to be asked what trains he had run; and the seventh assignment complains that the same witness was allowed to testify as to why it did not occur to him that by looking a little diagonally he might have seen some of the people that he knew might be there.

It appears from the record that the question referred to in the sixth assignment was never asked the witness nor answered by him. For the reason that the answer to the question referred to in the seventh assignment of error was harmless, and for the reasons given in disposing of the third, fourth and fifth assignments, there is no merit in the seventh assignment.

[3, 4] The eighth assignment involves the action of the court in permitting plaintiff's counsel to ask defendant's witness, Dr. W. M. Tunstall, the following question: "Did it sound like that blowing had Christmas in its bones?" and in permitting the witness to answer the same, and in permitting the plaintiff's counsel in argument of the case to comment upon this testimony of said witness.

The record shows that Dr. Tunstall had testified in his examination-in-chief as follows: "It continued to blow practically all the way down to Shipman and I thought that something unusual was going to take place and got up in the top of that caboose and looked out to see if I could see anything. * * * I couldn't see

anything * * * but the train blew and it blew almost continually all the way down there." "There is no doubt in the world about it because I am absolutely positive it did blow and continued to blow." "I got up in the cupola when the train passed me and looked to see what was the trouble. I thought they were going to have some trouble * * from the way they were blowing." "It was blowing in an unusual way. * * It was blowing to an unusual extent, more than common. * * I think it was the 24th of December." He was then asked on cross-examination, "Did it sound like that blowing had Christmas in its bones?" He answered: "It sounded like it had about a gallon in its bones."

The defendant did not object to this evidence, and cannot now be heard to complain of it. In the argument of the case before the jury, plaintiff's counsel referred to the conduct of the engineer as testified to by Dr. Tunstall, and characterized the same as "hilarious," and the defendant excepted.

Webster's Dictionary defines the word "hilarious," as follows: "Mirthful; noisy; merry;" and defines "hilarity," boisterous mirth, merriment."

The plaintiff's counsel had the right to discuss the evidence given by defendant's witness without objection, and in view of the conduct of the engineer, as described by Dr. Tunstall, it could certainly be said that his conduct was noisy or merry, or even hilarious. There is nothing in the record to indicate that the jury was in any way influenced by the term hilarious, as applied to the conduct of the engineer. Their verdict was for $5,000 when it might have been for $10,000. We find no reversible error in this assignment.

The ninth assignment challenges the action of the court in refusing to permit the defendant's counsel to

introduce and read to the jury the evidence of Crawford
Gordon, Sr., which was introduced orally and tran-
scribed at the second trial of the case, and in refusing to
permit defendant's counsel to introduce the testimony
of the defendant's witness, S. B. Whitehead.

[5] Crawford Gordon, Sr., was examined as a witness
for the plaintiff at the first and second trials of the case,
and at each trial he testified as an individual and not in
his representative capacity. At the third and last trial
he was absent on account of sickness, being at his home
in Cleveland, Ohio, and unable to make the trip to Vir-
ginia. Several days before the trial counsel for the
plaintiff, anticipating that Mr. Gordon might not be
able to attend court, obtained from defendant's coun-
sel his consent to use the stenographic report of Gor-
don's evidence given at the second trial, if they should
desire so to do. There was no agreement that *it should
be used*, and there was no intimation from defendant's
counsel that the defendant desired to use the steno-
graphic report as evidence for the defendant, if the
plaintiff did not use it. On the contrary, plaintiff's
counsel told defendant's counsel that they themselves
might decide not to use it. The only agreement ex-
acted of the defendant's counsel by the plaintiff's coun-
sel was that if the stenographic report should be used,
the whole of it would be read. At the trial plaintiff's
counsel did not introduce this evidence for the plaintiff.
Thereupon defendant's counsel moved the court to per-
mit the defendant to introduce said evidence in his be-
half, and to permit the defendant to introduce the wit-
ness S. B. Whitehead and allow him to testify to what
Gordon stated upon the witness stand at the last trial,
which motion the court overruled.

[6] Under the admitted facts in the instant case, de-
fendant's counsel had no right to prove either from the

transcript of Gordon's evidence or by the testimony of the witness, Whitehead, what Gordon had testified to at the last trial, except with the consent of the plaintiff. It is true that in civil actions, under certain circumstances, a party may be permitted to prove what a witness stated at a previous trial between the same parties and upon the same issues.

[7] In 16 Cyc, p. 1088, the rule is stated thus: "The court must be satisfied (1) that the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced. The first three of these conditions render the reported evidence relevant; the fourth is necessary to justify the court in receiving it."

[8] In the same work, at pp. 1095-6, after declaring that such testimony is substitutionary, it is said: "The court will, therefore, insist upon being satisfied, not only that the situation of the case promises some advantage from its use, but also that a sufficient reason be shown why the original witness is not produced; and that it is impossible, fairly speaking, for the person offering the evidence to produce the living witness or take his deposition." And on page 1098 the same author makes the following statement: "The more modern tendency is not only to require that the absence offered as a basis for admitting the former evidence should be permanent, but to require further that the party offering the evidence should show to the satisfaction of the court that he could not by the use of reasonable diligence have procured the deposition of the absent witness. Mere absence from the jurisdiction at the time of trial is a disa-

bility by no means equivalent to death, without affirmative evidence that a fruitless search has been conducted in good faith and with due diligence, and that, from ignorance of the witness' whereabouts or other reason, his deposition could not have been taken."

[9] The uncontradicted evidence is that Crawford Gordon, Sr., was sick at Cleveland, Ohio, but not in bed, and was well enough to give his deposition. The defendant's counsel never intimated that he wished to use Gordon's testimony taken on the former trial or that he wished time to take his deposition. The Virginia statute, Code sections 6226 and 6231, provides how depositions of witnesses residing out of the State may be taken and read as evidence in a civil case at law. Under such circumstances, the ruling of the court in refusing to allow the defendant to introduce the written evidence of Gordon, or to prove his statements as a witness at the last trial by the witness, Whitehead, was plainly right.

It is also contended by the defendant that he should have been allowed to introduce the testimony of the witness, Whitehead, on the ground that it would show an admission on the part of the plaintiff that there was no liability on the part of the defendant, because if the facts were as related by the plaintiff when testifying as a witness there could be no recovery.

This position is not well taken. Gordon is plaintiff in a representative capacity only, and he testified in an individual capacity.

[10] In Wigmore on Evidence, Vol. 2, sec. 1076 (2), p. 1275, speaking on the subject of admissions by parties to a suit, it is said: "Where the party sues in a representative capacity—*i. e.*, as trustee, executor, administrator, or the like—the representative is distinct from the ordinary capacity, and only admissions made in the former quality are receivable. * * * Conversely,

his admissions as executor or the like would not be receivable against him as a party in his personal capacity. A guardian, so far as his powers place him in a representative capacity, is subject to the same rules.''

[11, 12] The first assignment of error was to the action of the court in refusing to give four instructions offered by the defendant, and the second assignment to the action of the court in giving five instructions offered by the plaintiff. The plaintiff in error fails to point out any specific error in any of the instructions given on motion of the plaintiff, except instruction ''D,'' and it is admitted that ''D'' is an exact copy of instruction No. 5, which was passed upon by this court on the first appeal in this case. 128 Va. 426, 104 S. E. 796. In discussing this instruction at pages 434-435 of 128 Va., at page 798 of 104 S. E. this court said: ''This instruction does direct the attention of the jury to the evidence introduced by the plaintiff tending to prove that no warning signals of the approach of the train were given, and properly presents the issue which they should have been called upon to determine. This instruction, or its equivalent, should have been given, and it was error to refuse it without giving some other instruction which embodied the last clear chance doctrine as applicable to Mrs. Gordon and the specific evidence in the case.''

As to this instruction, the defendant, practically speaking, is asking this court to reverse its ruling made on the same question on the first appeal in this case. This will not be done. The decision of this court on the former appeal was binding on the trial court, and right or wrong will be decisive in this court on the second appeal.

[13] In *Steinman* v. *Clinchfield Coal Corp.*, 121 Va. 611, at p. 621, 93 S. E. 684, at p. 687, this court said: ''The doctrine briefly stated is this: Where there have been two appeals in the same case, between the same

parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law."

As frequently happens in personal injury cases, counsel in this case, in view of the record, asked for too many instructions. A needless multiplicity of instructions often tends to confuse rather than enlighten the jury, and the practice should be abandoned.

[14] A careful consideration of the instructions given on motion of the plaintiff and on motion of the defendant, respectively, satisfies us that the jury was fairly and sufficiently instructed on the law applicable to the case, and that there was no reversible error in the action of the trial court in refusing to give four of the instructions asked for by the defendant.

This brings us to the tenth and last assignment of error, which is to the action of the court in overruling the defendant's motion to set aside the verdict of the jury on the ground that said verdict was contrary to the law and the evidence.

[15] The plaintiff, as already stated, based his right to recover solely on the doctrine of the "last clear chance." In so doing he admits that his intestate, Mrs. Gordon, was in the first instance guilty of negligence. Notwithstanding that fact, the question is not, as suggested by defendant's counsel, one of concurrent or continuing negligence on the part of plaintiff's intestate in negligently continuing to stand in a place of danger, but rather one of remote and proximate cause. The defendant knowing her peril and that she was unconscious of it, and its agents and servants having the opportunity to avoid the injury and failing to do so, their negligence,

coming after that of the plaintiff's intestate, became the proximate cause of the injury.

[16] On the question of the defendant's negligence, Mrs. Gordon's position of peril, her unconsciousness of her danger and the defendant's knowledge thereof, and the defendant's opportunity and failure to save her from death, there is a hopeless conflict in the evidence. Had the jury believed the witnesses for the defendant, they would have found that the defendant was guilty of no negligence, that Mrs. Gordon left a place of safety and negligently walked in front of a rapidly approaching train, and was instantly killed, and the verdict would have been for the defendant.

The testimony of several witnesses for the plaintiff is to the effect that Mrs. Gordon was standing on the end of the cross-ties of the southbound track, with her back to the rails, talking to a Mr. Kidd, and did not move until the train struck her; that she had a newspaper down over her head, which she held with both hands to protect her hat from a misty rain; that she was unconscious of her peril; that the engineer of No. 35 could have seen her for a mile upon his approach to the station, and could have seen that she was oblivious to the danger of her position in ample time to have saved her, had he used ordinary care to keep a lookout, to signal the approach of the train by sounding the whistle or bell of his engine, and, if necessary, to retard the speed of or stop his train before reaching that point, all of which he failed to do. The credibility of the witnesses and the weight of the evidence were questions for the jury. The trial court has entered judgment upon the verdict, and we cannot say that the verdict or judgment is plainly wrong or without evidence to support it.

The judgment complained of must be affirmed.

*Affirmed.*