## Staunton.

### NEECE v. NEECE AND OTHERS.

September 14, 1905.

1. SPECIFIC PERFORMANCE—*Case in Judgment—Fraud.*—The evidence in this cause shows that the tract of land claimed by the appellant in his bill had been in the possession of the husband and father of the appellees for some time prior to his death; that he claimed it as his own in the presence of appellant, without dissent on his part; that he put valuable improvements thereon; that he caused it to be surveyed in the presence of appellant, with a view of taking a deed from him, and that appellant pointed it out as the land he was to convey him. If the evidence does not establish the fact that appellant gave or agreed to give to the husband and father of appellees, who was his brother, a title bond for the land, it clearly shows that the latter was in the possession of the land for a number of years under a contract or agreement so far executed that it would be a fraud upon his rights to now refuse an enforcement thereof.

2. EXECUTORS—*Title Papers—Inspection by Parties in Interest.*—While an executor named in a valid will is entitled to the custody of testator's title papers, parties in interest have the right to see and inspect them.

3. EVIDENCE—*Conduct as an Admission—Fraud.*—A party's conduct, so far as it indicates his belief in the weakness of his case, may be used against him as an admission, subject to any explanations he may be able to make removing that significance from his conduct. In particular, falsehood is a badge of fraud, and a case which is sought to be supported by deception may *prima facie*, until the contrary is shown, be taken as a bad and dishonest case.

Appeal from a decree in chancery of the Circuit Court of Dickenson county. Decree in favor of defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*A. A. Skeen,* for the appellant.

*Vicars & Peery* and *Columbus Phipps,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The appellant, complainant in the court below, filed his bill in this cause alleging ownership of a boundary of about 40 acres of land situated on McClure creek, in Dickenson county, and sought to enjoin, and did enjoin, appellees from committing divers trespasses upon said land. To this bill appellees, the widow and children of John C. Neece, deceased, filed their answer, asked to be treated as a cross-bill, charging that they were the owners of the land in question; that John C. Neece in his lifetime had obtained from appellant a title bond for the land, and had been put in possession thereof, and had made valuable improvements thereon, etc., the prayer of the cross-bill being that appellant be required to convey to appellees the said land.

The answer of appellant to the cross-bill denied its allegations, but admitted that appellant did verbally agree to let John C. Neece have a small piece of land for a house seat; that John C. Neece built a house upon said small piece of land, which house and other improvements in the way of buildings were afterwards burned, whereupon said verbal agreement was annulled by like verbal agreement, and possession of said small piece of land was delivered back to appellant.

Upon the pleadings and depositions taken on behalf of both appellant and appellees, the Circuit Court made its decree, appealed from, dissolving the injunction theretofore awarded, and requiring appellant to convey to appellees the land in question.

The sole question presented, therefore, is whether or not the evidence in the record justifies the decree complained of.

The facts disclosed are as follows: During the civil war,

or soon after its close, John C. Neece, as a settler, entered into actual possession of a tract of land, including the 40 acres in controversy in this suit; the section where the land is situated being covered by patents for large areas held in the names of non-resident claimants.    He cleared and cultivated a portion of the land, lived upon it, and claimed it as his own, but some years later moved to West Virginia, after first trying without success to sell the land thus claimed by him to his neighbors, and after removal continued his efforts to sell without avail. During the absence of John C. Neece, one E. J. Long had a survey made which embraced the land in controversy, and soon afterward appellant made a trip, presumably to West Virginia, and upon his return represented to E. J. Long that he had bought the land claimed by John C. Neece, but had no title bond or other written evidence of his purchase; whereupon Long, without payment to him of any consideration, executed to appellant a quit claim deed to certain lands embracing the 40 acre tract in controversy.    Sometime after this John C. Neece moved back to Virginia, found appellant in possession of his land, and obtained from him a title bond for the 40 acres in controversy or a verbal agreement to give up or release that much of it, and pursuant thereto John C. Neece immediately entered into possession of the land, built a substantial two-story log house and two corn cribs upon it, and cleared and fenced a considerable portion of the land, and made other permanent improvements thereon.    These improvements were made some eight or ten years prior to the year 1900, and John C. Neece lived on the land, claiming and using it as his own from the completion of his dwelling until it was burned a short time prior to his death, which occurred in December, 1900.

In the mean time John C. Neece had bought another tract of land, known as the Keel and Turner land, on the opposite side of the creek from the land in controversy, and when his house was burned he moved into a small house on this Keel and Turner tract, but continued in the actual possession of the land

in controversy. The upper portion of the Keel and Turner tract lay on the opposite side of the creek from the land of appellant upon which he lived, and his home place extended down near the house of John C. Neece which was burned. Two or three years before John C. Neece's death, he made a verbal agreement of exchange with appellant, by which he was to receive from appellant a small piece of land containing five or six acres off the lower end of appellant's land, adjoining the land in controversy, just above and near the house of John C. Neece, and in exchange therefor John C. Neece was to let appellant have a piece of land of like size off the upper end of the Keel and Turner land and near the house of appellant, which parol agreement of exchange was, after the house of John C. Neece burned, rescinded by mutual consent.

Throughout the entire period that the land in controversy was occupied by John C. Neece, his right thereto was never questioned by appellant. On the contrary, it was surveyed at the instance of John C. Neece in the presence of appellant, with the view of a deed therefor being made to him, and appellant was heard to say repeatedly, in the presence of disinterested persons who have testified in this case, that he was ready to make the deed to John C. Neece, his brother, at any time, and on one or two occasions the land was pointed out in appellant's presence as the land he was ready to convey to John C. Neece at any time. The land was recognized by all the neighbors as being the land of John C. Neece. He sold timber off the land to the same saw-milling firm operating near by appellant's home, to whom appellant at the same time sold timber from his own land, and the timber was cut and hauled by John C. Neece from the land in controversy to the saw-mill, and his right to the timber so cut and delivered was never questioned by appellant, although he knew of it, and was a frequent visitor to the saw-mill.

Nine days after the death of John C. Neece, appellant appeared with what purported to be a will of John C. Neece, the existence of which was known only to himself and one other,

written at appellant's house in his own handwriting, signed in the same handwriting, witnessed by himself and one E. B. Jessee (who testified in this case on behalf of appellant), naming appellant as executor of the will, and in which the Keel and Turner land of John C. Neece was disposed of, but no mention was made of the land here in controversy; and appellant sought to have the widow and heirs of John C. Neece sign a writing agreeing to the probate and recordation of the will without contest, which they declined to do. When asked by the widow and heirs why the land in controversy was not mentioned in said will, appellant then, and for the first time, made the claim that this 40 acre tract was the land which he was to exchange with John C. Neece for the five or six acres off of the Keel and Turner land, and that the contract of exchange had been rescinded before John C. Neece's death. This pretended will was afterwards offered by appellant for probate in the County Court of Dickenson county, and he and E. B. Jessee were examined as witnesses touching the same, but the court refused to admit the paper to probate as the will of John C. Neece, deceased. Thus a cunningly devised scheme on the part of appellant to put John C. Neece, deceased, in the attitude just before his death of making no claim to the land in controversy, and to which he, appellant, was not heard theretofore to make a claim, proved unavailing.

Belle Neece, a daughter, and Margaret Neece, the widow, of John C. Neece, testify that John C. Neece, had a title bond for the land from appellant, and the first named witness says that her father so stated in the presence of appellant, to which statement he made no dissent. These witnesses are corroborated touching the title bond by a witness introduced on behalf of appellant. Margaret Neece, the widow, and Louisa Holbrook, another daughter of John C. Neece, testify that while preparations were being made for his burial, they were looking over some title papers found in his clothes, when appellant appeared, took possession of all these papers, except one, and also of the clothes containing other title papers of the de-

ceasèd, and they were never afterwards returned by him or seen by any member of the family of John C. Neece.

This testimony touching the conduct of appellant concerning the title papers held by John C. Neece is uncontroverted by appellant himself, who testified on his own behalf touching other matters in dispute.

As contended for by appellant, an executor named in a valid will has the right to the custody of the title papers belonging to his testator; but there is neither law nor reason for the parties in interest being denied the right to see and examine such papers.

In general, a party's conduct, so far as it indicates his own belief in the weakness of his cause, may be used against him as an admission, subject of course to any explanations he may be able to make removing that significance from his conduct. In particular, falsehood is a badge of fraud, and a case which is sought to be supported by means of deception may *prima facie,* until the contrary be shown, be taken to be a bad and dishonest case; and this applies equally to civil and criminal cases . . . so also the attempt to suppress evidence by intimidating or removing witnesses is admissible as having a tendency to show consciousness in him of title in the opponent. "Concealing or destroying evidential material is likewise admissible; in particular the destruction (spoliation) of documents as evidence of an admission that their contents are as alleged by the opponents." 1 Greenleaf Ev. (16 Ed.), sec. 195, at p. 325.

The circumstances proven, aside from the direct proof on the subject, warrant the presumption that when Jno. C. Neece returned from West Virginia and found appellant in possession of this land with a quit claim deed therefor from an outsider, for which no consideration whatever was paid, a dispute arose between them as to their rights, and that, by way of a settlement of the dispute, appellant agreed to and did execute to Jno. C. Neece a title bond for the 40-acre parcel here in question.

But if it could be conceded, even for the sake of argument, that the evidence is insufficient to establish the fact that John

C. Neece had a title bond for the land in dispute, it clearly shows that he was in the possession of the land for a number of years under contract or agreement so far executed that it would be a fraud upon his rights to now refuse an enforcement of such contract or agreement.

It is not controverted that improvements amounting in value to $300 or $400, were put upon the land by Jno. C. Neece; nor that a division line was run by a competent surveyor at the instance of John C. Neece, and in the presence of appellant, so that "they would know how to make the deed"; nor that on another occasion when appellant, as well as John C. Neece, was present, the latter pointed out to a disinterested witness testifying in this case the lines of the 40-acre tract as the land owned by him, and that appellant made no claim whatever to the land. It is clearly proved also by several witnesses that on several occasions appellant told John C. Neece, in the presence of these witnesses, that he was ready to make him a deed for the land at any time, without a suggestion that he had not been fully paid therefor, and whereby it necessarily follows that the consideration for the land had been fully paid.

In addition to the facts and circumstances stated as going to discredit appellant and at least one of his principal witnesses in this cause, (E. B. Jessee,) the appellant stands impeached in this record by the testimony of five reputable citizens of Dickenson county.

The claim set up by appellant, that the land he was to let John C. Neece have in exchange for five or six acres of the Keel and Turner tract, afterwards rescinded, was the 40-acre tract in controversy and included John C. Neece's house site, was clearly an afterthought, absurd on its face, and plainly had its origin in a fraudulent design to take advantage of the death of John C. Neece, and a supposed inability on the part of his widow and children to defend their right to the land.

We are of opinion that the proofs in the cause fully justify the decree of the Circuit Court, and therefore it is affirmed.

*Affirmed.*