SCHOOL DISTRICT OF THE CITY OF PONTIAC *v.* SACHSE.

1. EVIDENCE—FORMER ACTION—ABSENT WITNESS.
   Testimony taken at trial of former action may be read to a jury where subject-matter involved in suit is substantially the same, party objecting had opportunity of full cross-examination in former action and sufficient reason is shown why witness himself cannot be produced.

2. SAME—DEATH OF WITNESS—BEST EVIDENCE.
   Testimony of witness largely responsible for conviction of defendant on charge of obtaining money from plaintiff school district by fraudulent means *held*, properly read to jury in civil action to recover such sum where the witness had died after the criminal trial, the subject-matter is substantially the same and party objecting to its introduction had opportunity of full cross-examination in the criminal proceeding, since the court is entitled to the best evidence possible.

3. FRAUD—EVIDENCE—SCHOOLS AND SCHOOL DISTRICTS—EXPENSES.
   In action by school district against president of its school board for money obtained by him through fraudulent conduct in arranging purchase of school site, preponderance of evidence *held*, to justify verdict for amount he had claimed would be necessary to reimburse party to whom he had sold property for expenses of such party theretofore incurred.

4. SAME—EVIDENCE—DISCLOSURE OF AGENT.
   In action by school district against president of its school board to recover sums alleged to have been fraudulently obtained, verdict that included amount, representing difference between sum defendant paid for property and amount for which he had previously sold it on contract to a third party, as tainted with fraud *held*, unsupported where contract of sale to such third party was not shown to have been fraudulent and plaintiff was informed of its existence before making purchase from defendant.

5. PRINCIPAL AND AGENT—DUTY TO INFORM PRINCIPAL.

An agent must fully inform his principal of all facts relating to the subject-matter of the agency which come to agent's knowledge and which it is material for principal to know for protection of his interests.

6. SAME—AGENT'S FAILURE TO MAKE DISCLOSURE.

Agent's failure to disclose to his principal facts relating to subject-matter of agency renders transactions in which he is personally interested voidable and subjects agent to liability to principal for any loss he proximately sustains thereby.

7. SCHOOLS AND SCHOOL DISTRICTS—PRINCIPAL AND AGENT—BREACH OF DUTY—MEASURE OF DAMAGES.

President of school board who was financially interested in tract of real estate purchased by school district had duty to disclose all facts to board relative to its price and measure of damages for breach of such duty is difference between amount paid for property and amount it could have been purchased for had full disclosure been made.

8. APPEAL AND ERROR—REMITTITUR.

In action for fraud where record sustains but one of two items included in verdict for plaintiff, plaintiff is granted choice of filing remittitur to reduce judgment to amount supported by preponderance of evidence or reversal with new trial.

Appeal from Oakland; Covert (Frank L.), J. Submitted October 22, 1935. (Docket No. 7, Calendar No. 37,963.) Decided January 7, 1936.

Case by School District of the City of Pontiac, a municipal corporation, against Otto Sachse to recover money paid under false pretenses. Verdict and judgment for plaintiff. Defendant appeals. Reversed conditionally.

*George A. Cram,* for plaintiff.

*Edward N. Barnard,* for defendant.

BUTZEL, J. The school district of the city of Pontiac brought this action on the case against Otto

Sachse, involving the civil liability of defendant for the acts for which he was held criminally liable as set forth in *People* v. *Sachse,* 252 Mich. 275. On November 23, 1927, after negotiations of several months, defendant purchased on contract from the Ottawa Hills Land Company an unrestricted piece of property consisting of the easterly portion of lot 291 of the Ottawa Hills subdivision in Pontiac. Defendant made a down payment of $2,000 and agreed to pay an additional $15,000 with interest over a term of years. Pontiac at that time was growing very rapidly and the value of real estate was rising by leaps and bounds. Almost contemporaneously with the execution of this contract, defendant executed a contract for resale to Paul Kamper of Detroit. Although the contract bears date November 15, 1927, it was acknowledged by defendant on December 10, 1927. It called for a purchase price of $30,000, of which there was a down payment of $5,000, represented by a note given by Kamper to Sachse. Kamper, as far as the testimony shows, was contemplating the building of an apartment house on the property.

Plaintiff owned the westerly portion of this same lot, upon which it had erected a large schoolhouse. Plaintiff had been considering the erection of an additional school building and the acquisition of a proper site. On November 22, 1927, the electors had voted a bond issue for building a junior high school in the western part of the city. In the early part of 1928, but after the purchase of the property by defendant and its resale to Kamper, a prominent educator, Professor Packer, visited Pontiac and his advice was sought by the school board. Although defendant was president of the school board, there is no testimony whatever that

he was responsible for Professor Packer's advice to purchase this particular piece of property nor for the fact that the city followed it. When it was determined to purchase the property in question, defendant informed plaintiff that Paul Kamper had purchased it from defendant on contract for the sum of $30,000. He also stated that it would be necessary to pay the sum of $2,500 to Kamper to reimburse him for certain blueprints and sketches prepared in connection with the property in order to get Kamper to release his vendee's interest in the property. Secrecy was enjoined for fear that Kamper might raise his price and the transaction was closed through the escrow agency of a trust company at a total price of $32,500. Defendant received the $2,500 which he claimed that Kamper was demanding and immediately deposited it in the bank in a joint account of himself and wife. He also received the entire balance that would have been due him on the Kamper contract over and above what he still owed on the property, plaintiff taking an assignment of the Ottawa Hills Land Company contract and paying it up.

At the time, however, plaintiff acquired the property, the Kamper contract appeared to be *in extremis*. Negotiations had been pending between Kamper and defendant towards its cancellation, Kamper having notified defendant that he could not go through with it. After the agreement with plaintiff was entered into, Kamper's contract was marked "cancelled" and returned to Sachse and the $5,000 note previously received from Kamper was returned to him. Defendant was prosecuted for obtaining the $2,500 "expenses" and $13,000 "profit" through false and fraudulent representations and was convicted. The first count of the in-

formation alleged both the $2,500 and the $13,000 items and we held that he could be convicted on this first count, as false representations as to either of these items was sufficient to sustain the judgment of conviction. See *People* v. *Sachse; supra.*

The conviction in the criminal case was largely due to the testimony of Paul Kamper who testified both at the preliminary examination and at the trial and positively declared that he neither demanded nor received a single penny for the cancellation of the contract. He evidently did not know anything about the transaction until after its consummation. Kamper was fully cross-examined in the criminal case by the attorney then representing defendant. Kamper died prior to the trial in the instant case, and his testimony was read over the objection of defendant's attorney. The jury rendered a verdict against defendant, not only for the $2,500 item, but also for the full amount that defendant made over and above the original cost of the property to defendant.

The first question on appeal is whether the testimony of Paul Kamper properly could be read to the jury. Defendant claims that the parties to the criminal action were not the same as those in the instant case and that the reading of Kamper's testimony should have been excluded. Although the court is entitled to the best testimony possible and much care must be exercised in what testimony shall be allowed to go before the jury, in certain cases it is permissible that testimony taken at a former trial be introduced where the witness himself cannot be produced. This is true where the second suit involves substantially the same subject-matter and where the party objecting to its introduction had the opportunity of full cross-examina-

tion in the first action. The reading of the testimony under such circumstances repeatedly has been held proper. Many cases could be cited, but we limit them to civil cases like the instant one where the testimony was first taken in a criminal case, the party against whom the evidence is offered was a party in the former trial and had an opportunity for full cross-examination, the subject-matter is substantially the same, the party who proposes to submit the former evidence is able to present it with satisfactory exactness and a sufficient reason is shown why the original witness is not produced. *Charlesworth* v. *Tinker,* 18 Wis. 633; *Krueger* v. *Sylvester,* 100 Iowa, 647 (69 N. W. 1059); *Ray* v. *Henderson,* 44 Okla. 174 (144 Pac. 175); *Huempfner* v. *Bailly,* 36 S. D. 533 (156 N. W. 78); 3 Wigmore, Evidence (2d Ed.), §§ 1386–1388; Greenleaf, Evidence (16th Ed.), §§ 163–166.

The defendant further claims that the verdict is against the great weight of the evidence. There can be no doubt but that the testimony fully supports the recovery by plaintiff on the $2,500 item. Defendant, taking advantage of his position with plaintiff, obtained this amount by false representations. We do not believe, however, that there was a preponderance of testimony showing that defendant obtained the $13,000 item in the manner charged. There is no testimony in the instant case showing that the Kamper contract was fraudulent or that it was conceived or entered into for the purpose of defrauding the city. Plaintiff was informed of the contract before it made the purchase. There is no showing by plaintiff that the representations made by Sachse of a land contract outstanding in Kamper were untrue. The gravamen, then, of defendant's offense here was not that he had plaintiff

take over property belonging to defendant without disclosure on his part that it belonged to him, but rather that he, as a trusted agent of plaintiff, did not make full disclosure of all the facts of the entire situation, particularly of the fact that Kamper was ready, willing and anxious that the contract be terminated. Had plaintiff been so fully informed, it might have negotiated with defendant for the purchase at a lesser price. At least it was entitled to the fullest information.

The correct rule is stated in 1 Mechem on Agency (2d Ed.), § 1207, with references, as follows:

"It is always the duty of an agent, * * * to fully inform the principal of all facts relating to the subject-matter of the agency which come to the knowledge of the agent, and which it is material for the principal to know for the protection of his interests. * * * But even where the agent is not personally interested in the contract, his duty to give the principal full information of all the material facts relating to the transaction, which are within his knowledge, still exists. A failure to perform this duty, while not necessarily rendering transactions with third persons voidable, as it would do if the agent were himself personally interested, will still make the agent liable to the principal for any losses which he has proximately sustained thereby."

In *Auto Workers' Temple Ass'n* v. *Janson,* 227 Mich. 430, one Janson was appointed agent of plaintiff association to purchase certain property. Although the price quoted by the vendor of the property was only $32,000, the agent Janson stated to the association that the price was $36,000. Suit was brought in trespass on the case, as in the instant case, and a recovery of $4,000 against Janson was

upheld, although Janson's actual profit out of the transaction was only $1,000. The court held:

"But counsel argue that even if there were a conspiracy there was no damage; that the land purchased was worth the money. * * * But some damage did result in the instant case. Plaintiff paid $36,000 for what it should have purchased for $32,000. Had Janson been faithful to the trust imposed in him by his principal it would have purchased the property for $32,000. The proof shows that the vendor said anyone could purchase the lot for $32,000. If Janson had had the common honesty that the law under such circumstances demanded of him, he could have purchased the site for plaintiff for $32,000. It was by reason of his recreancy and his machinations that the association paid $36,000 for what it ought to have acquired for $32,000. The simple fact that Janson did not realize as much out of his unlawful scheme as he anticipated was no fault of his. He did realize $1,000 out of his perfidy. He was not entitled to that sum. He acted as an agent for plaintiff and whatever he may have wrongfully made in the transaction of the property belonged to his principal."

As far as the present testimony shows, the instant case is not a case of a sale by an agent of his own property to his principal without a disclosure that it belongs to him, for there is no proof that the contract with Kamper was non-existent at the time the representations were made and negotiations were being carried on by the city for the purchase of the property; neither is it a case of an agent purchasing property with the intent of subsequently selling it to his principal, but rather a case involving the failure of an agent to disclose facts bearing upon the price which the principal is to pay for prop-

erty. This constitutes a breach of the agent's duty and plaintiff is entitled to damages. In addition to the item of $2,500 and interest, the true measure of damages is the difference between what plaintiff paid for the property and what it could have purchased it for had the defendant made a full disclosure as was his duty to do. Without any further testimony showing a different situation, this would be governed by the true value of the property at the time it was purchased. The testimony in the present case does not indicate this amount, but, by the same token, it does not support the verdict for the difference between the price plaintiff paid for the property and the cost to the defendant.

Errors in the charge complained of by defendant have no merit and we need not discuss them. Except as to matters discussed heretofore in the opinion, the charge was not improper. On this record, the plaintiff is entitled to at least $2,500, plus interest, but how much in addition thereto we are unable to tell. Plaintiff is therefore entitled either to file a remittitur so as to reduce the judgment to $2,500 with interest or a reversal of this judgment and a new trial in accordance with the views expressed herein. Unless plaintiff files such remittitur within 15 days from the date this opinion is handed down, a new trial is ordered. Defendant will recover costs of this court.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and POTTER, JJ., concurred.