# TIMOTHY MAYNARD GRAY, ET AL.

## V.

# JEAN C. GRAHAM

Record No. 821582

March 7, 1986

Present: All the Justices

*Frank B. Miller, III (Christopher C. Spencer; Sands, Anderson, Marks & Miller,* on briefs), for appellants.
*Thomas W. Williamson, Jr. (Emroch & Williamson,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In a motion for judgment filed in the trial court, Jean C. Graham sought damages for personal injuries from Timothy Maynard Gray and his employer, Evans Products Company, doing business as Moore's Building Supply (Moore's); Laura Anne Shook, Executrix of the Estate of David A. Chidester, deceased, and Chidester's employer, Diamond Hill Plywood Company (Diamond Hill); and John Doe. A jury returned a verdict awarding Graham damages in the sum of $250,000 against Gray and Moore's but exonerating Chidester's estate, Diamond Hill, and John Doe. The trial court entered judgment in accordance with the verdict. Gray and Moore's appeal.

Graham sustained her injuries in an automobile accident which occurred about 8:25 a.m. on June 26, 1979, as she was driving in an easterly direction along Route 360 in Richmond County. At the location of the accident, Route 360 is a level, straight, four-lane divided highway. At the time, the weather was clear and the road surface dry.

Graham was accompanied by two passengers, Rosaline Whitescarver and Susan Ingalls. At a point about 2 ½ miles east of the

Rappahannock River Bridge at Tappahannock, Graham came upon two trucks proceeding in the right-hand eastbound lane. She passed the first truck, operated by Chidester and owned by Diamond Hill, without incident.

When Graham attempted to pass the second truck, it moved from the right lane into the left lane in front of Graham and, without making contact, forced her vehicle onto the left shoulder. She lost control, and her vehicle veered to the right across the two eastbound lanes, where it was struck by Chidester's truck. The truck which forced Graham off the road did not stop, but continued down the highway.

Graham and Whitescarver were both injured and had no recollection of the accident. Ingalls, uninjured, remembered seeing "a flatbed truck with something tall on the back" move to its left, but she could not further identify the truck and offered no description of its driver.

Chidester, however, identified the truck, but not its driver, in several statements he made following the accident. In each statement, Chidester identified the truck as one belonging to Moore's.

Chidester first identified the truck as belonging to Moore's in a statement he made to Carl W. Greenstreet, who arrived at the accident scene while Graham's vehicle was still "smoking." Chidester's second statement identifying the truck as one of Moore's was made to Milton E. Gallahan, Jr., a state trooper who arrived at the accident scene in response to a call and undertook an investigation of the incident.[1]

As a result of what Chidester told him, Trooper Gallahan drove eastbound on Route 360 approximately one hour after the accident occurred and met a Moore's truck "heading west . . . in the direction of Tappahannock." The trooper turned around, stopped the truck, and found it was driven by Gray. Upon questioning, Gray denied any involvement in the accident.

Some time later, the trooper charged Gray with reckless driving. At trial on the charge in the general district court, Chidester testified as a Commonwealth's witness; he stated that Moore's truck forced Graham off the road, but he could not identify the truck's driver. The judge dismissed the charge, stating that Gray

---

[1] Chidester made a third statement identifying the truck as one belonging to Moore's. This statement, made to an insurance adjuster, is not relevant here.

had not been "identified as the driver who was there" and that it had not been proven "his vehicle was there."

Chidester died between the time of the criminal trial and the date of the trial of the present action.[2] In the latter trial, Graham offered into evidence the statements Chidester made to Greenstreet and Trooper Gallahan as well as the testimony Chidester gave in the criminal trial. The admissibility of the statements and the prior testimony became a principal issue in the trial court; it is the principal issue here.

## I.

The trial court first considered the admissibility of Chidester's prior testimony, which was contained in a transcript of the criminal trial. Over objection of Gray and Moore's, the court admitted the testimony.

On appeal, Gray and Moore's acknowledge that an exception to the hearsay rule, recognized by this Court in *Director General* v. *Gordon*, 134 Va. 381, 114 S.E. 668 (1922), permits use of the prior testimony of a witness under certain conditions. There, we said that prior testimony is admissible if the court is satisfied:

> "(1) that the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced."

134 Va. at 390, 114 S.E. at 670 (quoting 16 Cyc. 1088 (1905)).[3]

---

[2] Chidester died from causes unrelated to the accident in question.

[3] *Director General* involved testimony given at a prior trial of the same civil action. Gray and Moore's cite *Smith* v. *New Dixie Lines*, 201 Va. 466, 111 S.E.2d 434 (1959), and argue that testimony given at a prior criminal trial is not admissible at a later civil trial because, the argument goes, "[p]arties to civil trials are not the same as those to prior criminal trials." In *Smith*, the trial court had admitted into evidence at the trial of a personal injury action the defendant's prior conviction of reckless driving arising out of the same accident, a situation entirely different from the one involved here. When the conditions prescribed in *Director General* are satisfied in a subsequent civil trial, it is immaterial that the prior testimony was given in a criminal trial. *School District of Pontiac* v. *Sachse*, 274 Mich. 345, 349-50, 264 N.W. 396, 397 (1936). *See Fisher* v. *Commonwealth*, 217 Va. 808, 813, 232 S.E.2d 798, 802 (1977) (approving the use in a felony trial of the preliminary hearing testimony of a witness who died in the interim).

Gray and Moore's agree that a transcript of the criminal trial satisfied condition (3) above and that the death of Chidester satisfied condition (4). They argue, however, that conditions (1) and (2) were not satisfied. With respect to condition (1), they say: "[T]he parties in this action are not the same parties present at the criminal trial. Graham, Chidester, [Moore's], Diamond Hill and John Doe were not parties. At the very least, Graham must have been a party to the prior proceeding since she was the proponent of the evidence below."

This argument overlooks the plain language of *Director General* which states that it is "the party against whom the [prior testimony] is offered," *id.*, and not all the parties to the subsequent proceeding, whose presence as a party to the earlier action is required. The argument also disregards the alternative recognized in *Director General* which permits the use in a civil case of prior testimony if *a privy* of the party against whom the evidence is offered was a party to the prior action.

In this context, the terms "privy" and "privity" are not limited, as Gray and Moore's would limit them, to their meaning in the field of property law. *Bartlett* v. *Kansas City Public Serv. Co.*, 349 Mo. 13, 20, 160 S.W.2d 740, 745 (1942). In *Nero* v. *Ferris*, 222 Va. 807, 284 S.E.2d 828 (1981), we said that "[w]hile privity generally involves a party so identical in interest with another that he represents the same legal right, a determination of just who are privies requires a careful examination into the circumstances of each case." *Id.* at 813, 284 S.E.2d at 831.

In *Nero*, a case involving a judgment for personal injuries in an automobile accident, we held that employer and employee stand in privity with one another. *Id.* Although this holding was made in the context of an application of the law of collateral estoppel, we think the holding is pertinent here.

It is undisputed that the relationship of employer-employee existed between Gray and Moore's at all relevant times and places. Further, the record shows clearly that, at the trial of the reckless driving charge, Gray's counsel was given adequate opportunity to cross-examine Chidester, an opportunity of which counsel took full advantage by questioning the witness thoroughly. Under these circumstances, we believe Gray should be considered the privy of Moore's for the purpose of admitting Chidester's prior testimony into evidence at the trial of the present action.

With respect to condition (2) of *Director General*, Gray and Moore argue that the issues in Gray's criminal trial and those in the trial of the present action were not substantially the same. At the criminal trial, the argument continues, "the sole issue was whether Gray was the driver of the second truck" Graham attempted to pass, while at the civil trial, "the primary issue was whether or not the second truck was a 'Moore's' truck." Furthermore, Gray and Moore's assert, "[m]any other issues were also present" in the civil trial, including Chidester's negligence and Graham's contributory negligence, which were not involved in the criminal trial.

■ The "substantially the same" test, however, does not require that "all the issues (any more than all the parties) in the two proceedings must be the same, but at most that the issue on which the testimony was offered in the first suit must be the same as the issue upon which it is offered in the second." McCormick on Evidence § 257 (3d ed. 1984). Here, while a critical issue in the criminal trial was whether Gray was the driver of the truck which forced Graham off the road, certainly an equally critical issue was whether the offending vehicle was a Moore's truck. Had the Commonwealth proved the offending vehicle was a Moore's truck, then the circumstances of time and place disclosed by other evidence in the case made it likely that Gray was the offending driver.[4]

■ In the trial of the present action, the primary issue was whether the second truck was a Moore's truck. Here, similar to the situation in the criminal trial, an issue of equal importance was whether Gray was the driver of the offending vehicle. Had Graham been able to prove Gray was the driver, she also would have established that the offending vehicle was a Moore's truck; the evidence as a whole made it a near-certainty that if Gray was the offending driver, then the offending truck belonged to Moore's.

Chidester's testimony, therefore, was relevant in both trials on the issues of the identity of the offending driver and the identity of the offending vehicle. Hence, there was sufficient similarity of is-

---

[4] Gray and Moore's suggest that somehow the issues whether "Gray was the driver of the second truck" and whether "the second truck was a 'Moore's' truck" were not involved in the criminal trial. This argument is difficult to comprehend, especially considering that the district court judge dismissed the criminal charge because Gray had not been "identified as the driver who was there" and that it had not been proven "his vehicle was there," obviously meaning it had not been proven "[a Moore's truck] was there."

sues in the two trials to satisfy the second prong of the *Director General* test and permit use of Chidester's testimony in the civil trial.

## II.

The trial court also admitted into evidence statements made by Chidester to Carl W. Greenstreet and Trooper Gallahan about how the accident occurred. Gray and Moore's say these statements constituted inadmissible hearsay. Graham argues the statements were admissible under Code § 8.01-397, and the parties agree that the admissibility of the statements turns upon our interpretation of the Code section. In pertinent part, the section reads:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the . . . executor, administrator . . . or other representative of the person so incapable of testifying . . . whether such adverse party testifies or not, all . . . declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party.

Gray and Moore's argue that hearsay statements made by a person since deceased are admissible under Code § 8.01-397 "only when offered as evidence *by* or *against* a decedent's estate." (Emphasis in original.) The statute was "never meant . . . to be used as it was below," the argument continues, "by a living plaintiff against a living person who was, through sheer coincidence, a co-defendant with a decedent." Because the evidence in dispute "was not offered 'by or against' Chidester's representative," Gray and Moore's conclude, "it was inadmissible regardless of any tangential benefit to [Chidester's estate]."[5]

In this argument, Gray and Moore's apparently forget that Chidester's estate was a party defendant in the trial below and that Graham was actively pursuing her claim against the estate

---

[5] The parties also debate the question whether the statement Chidester made to Carl Greenstreet was admissible under the res gestae or excited utterance exception to the hearsay rule. As a threshold proposition, however, which Gray and Moore's do not dispute, we reach this question only if we hold the statement inadmissible under Code § 8.01-397.

when she offered Chidester's prior testimony into evidence. Hence, even according to the way Gray and Moore's read Code § 8.01-397, the prior testimony was "offered . . . *against* a decedent's estate."

Gray and Moore's, however, misread the Code section when they say that the statements made by a person since deceased are admissible only when *offered* by or against his estate. The statute says that such statements may be received as evidence *in any action* by or against the estate.

■ The statements were relevant to Graham's claim against Chidester's estate and Diamond Hill on the one hand and her claim against Gray and Moore's on the other. From the statements and other evidence in the case, the jury could have found that Chidester should have avoided striking Graham and that his estate and Diamond Hill were solely liable for her injuries; or, the jury could have found that Gray and Moore's were solely liable, or jointly liable with Chidester's estate and Diamond Hill, for the injuries.

■ In any of these scenarios, it is immaterial that the statements were offered into evidence by Graham and not by Chidester's representative. Nothing in the language of Code § 8.01-397 suggests that application of the statute should be limited in the manner suggested by Gray and Moore's.

### III.

■ Gray and Moore's next contend that the trial court erred in permitting Graham to show that Gray had refused to be photographed for identification purposes. On this point, the record discloses that about two weeks after the accident occurred, Trooper Gallahan saw Gray and asked him to permit the taking of his photograph. The trooper explained that he wanted to use the photograph in an array to determine whether Chidester could identify Gray as the driver of the Moore's truck. Gray agreed, but failed to appear at the appointed time. When the trooper saw Gray again and asked him why he had not appeared as agreed, Gray said "his people at Moore's or their attorney . . . advised him not to do this."

Gray and Moore's argue that "the prejudicial effect of [this] evidence far outweighed its slight probative value" and that it should not have been admitted. We have held, however, that a party's conduct, "so far as it indicates his own belief in the weak-

ness of his cause," is admissible as an admission against interest. *Neece* v. *Neece*, 104 Va. 343, 348, 51 S.E. 739, 740 (1905). Under this rule, it is permissible to show that a party attempted to suppress or conceal evidence. *Id.*, 51 S.E. at 740-41.

Gray's refusal to permit the taking of his photograph for identification purposes, prompted by "his people at Moore's," may reasonably be viewed as such an attempt. While evidence of the attempt may have had some prejudicial effect on the jury, we are not prepared to say that the prejudicial effect of the evidence outweighed its probative value. An assessment of the prejudicial effect of evidence against its probative value is a matter largely within the discretion of the trial court. *Coe* v. *Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986); *Seilheimer* v. *Melville*, 224 Va. 323, 327-28, 295 S.E.2d 896, 898-99 (1982). We find no abuse of that discretion here.

Even so, Gray and Moore's argue, they should have been permitted to mitigate the prejudicial effect of this evidence by showing that Gray had offered to submit to a polygraph examination. Yet, Gray and Moore's complain, the trial court rejected their evidence in mitigation and thus compounded the error in admitting the evidence of Gray's refusal to be photographed.[6]

We agree that Gray and Moore's were entitled to mitigate the effect of the evidence concerning Gray's refusal to be photographed, *see Neece*, 104 Va. at 348, 51 S.E. at 740, but they were not entitled to use improper evidence for that purpose. Evidence of a person's willingness or unwillingness to submit to a polygraph examination is inadmissible. *Barber* v. *Commonwealth*, 206 Va. 241, 251, 142 S.E.2d 484, 492 (1965); *see Robinson* v. *Commonwealth*, 231 Va. 142, 155, 341 S.E.2d 153, 167 (1986).

Gray and Moore's argue further that the trial court exacerbated its error in admitting the evidence of Gray's refusal to be photographed when it granted Instruction No. P-IB at Graham's request. This instruction told the jury it was not required to accept any of the testimony of "any witness [who] has knowingly testified untruthfully as to any material fact in this case."

The instruction was improper, Gray and Moore's say, "because there was no evidence, only sheer speculation, that Gray or any other . . . employee [of Moore's] testified untruthfully." The in-

---

[6] Gray and Moore's state on brief that Gray also offered to appear in a live lineup, but we find no evidence in the record to support this statement and nothing to indicate the trial court refused to admit evidence of the offer.

struction, however, did not single out Gray or any other employee of Moore's or, for that matter, any particular witness. It applied across the board to all the testimony in the case, including that submitted on behalf of Graham as well as on behalf of Gray and Moore's. The trial court did not err in granting the instruction.

Finding no error in the rulings of the trial court, we will affirm its judgment.

*Affirmed.*