COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Haley
Argued at Richmond, Virginia


KENNARD FOWLKES
                                                            OPINION BY
v.        Record No. 3092-06-2                      JUDGE ROBERT P. FRANK
                                                            JULY 8, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L.A. Harris, Jr., Judge

William T. Linka (Richmond Criminal Law, on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kennard Fowlkes, appellant, was convicted, in a jury trial, of two counts of murder in

violation of Code § 18.2-32, one count of burglary while armed with a deadly weapon, in

violation of Code § 18.2-90, and three counts of use of a firearm in the commission of a felony,

in violation of Code § 18.2-53.1.  On appeal, he contends the trial court erred in not granting a

mistrial as a result of the prosecutor's questioning of a witness about polygraph examinations.

For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

Appellant was accused of killing two people in Henrico County in June 2005.  There

were no witnesses or physical evidence linking appellant to the murders.  The primary evidence

of appellant's guilt was the testimony of two witnesses, appellant's girlfriend at the time of the

murders, Natalie, and appellant's friend, Leonel.

In March 2004, Leonel began cooperating with the U.S. Drug Enforcement

Administration (DEA), providing the agency with information involving drug activity.

Appellant approached Leonel in June 2005, shortly after the murders, and confessed his involvement to Leonel. In August 2005, Leonel related appellant's confession to DEA Special Agent Steve Miller, who then contacted Henrico County police. Henrico authorities interviewed Leonel about the murders.

Subsequently, in October 2005, Leonel entered a plea agreement with the federal government concerning the federal drug conspiracy charges pending against him. The plea agreement was introduced, without objection, during appellant's trial. As a condition of the plea agreement, Leonel was to provide "full, complete and truthful cooperation" regarding any criminal activity known to him. To that end, Leonel agreed, upon request of federal authorities, to voluntarily submit to polygraph examinations. At appellant's trial for murder, Leonel testified that he was never asked to take a polygraph test by federal agents.

During the prosecutor's examination of Agent Miller, the following dialogue occurred:

| [Prosecutor:] | The plea agreement that ultimately Leonel [] entered into in October of '05, did that require him to submit to a polygraph or a lie detector? |
|---|---|
| [Agent Miller:] | It, it would, it doesn't, yes, it does require if -- |
| [Prosecutor:] | -- If asked -- |
| [Agent Miller:] | -- If requested, yes. Yes, sir. |
| [Prosecutor:] | Did you ever request it? |
| [Agent Miller:] | No, sir. |
| [Prosecutor:] | Is that polygraph language, is that standard in all plea agreements of the sort that [Leonel] entered into? |
| [Agent Miller:] | Yes, sir. Yes, sir. |
| [Prosecutor:] | What made him special for his case? |

[Agent Miller:]          No, it's just, it's just, it's standard language. And it also reinforces that if we think that you're not telling the truth, then we're going to, you know, explore, basically that we're going to have to use all means to be able to prove or disprove that.

       \*      \*      \*      \*      \*      \*      \*

[Prosecutor:]         Was [the fact that you did not ask Leonel to submit to a polygraph] different in your experience dealing with other confidential informants?

[Agent Miller:]          Yes.

[Defense Counsel]:    Objection --

[Trial Court]:         -- Sustain the objection.

[Prosecutor]:          Okay.

[Prosecutor:]         The polygraph, is that, to your knowledge, admissible in court?

[Trial Court]:         Sustain the objection.

[Defense Counsel]:    In a motion, please, Judge.

[Trial Court]:         Yeah, you're getting close, [Prosecutor]. Get away from it.

[Prosecutor:]         Now --

[Defense Counsel]:    -- The --

[Trial Court]:         -- I hear you.  Hold on.

[Prosecutor:]         The use you all make of that is just to evaluate the person's worth, is that correct?

[Defense Counsel]:    Objection, Judge.

[Trial Court]:         Sustained.  Ask the jury to step out, please.

[Trial Court]:         All right.  The jury is out.

| | |
|---|---|
| [Defense Counsel:] | Judge, move the case to be declared a mistrial, Judge. Now, we have a situation where [Leonel] was asked about the polygraph. He was asked and he was permitted to answer whether or not he'd been asked to provide a polygraph.

Now, we have Agent Miller here who is asked at least five questions about the polygraph, Judge. |
| [Trial Court:] | Two after an objection had been sustained. |
| [Defense Counsel:] | Yes, sir, thank you. And additionally, Judge, the next question, whether the jury, I believe he started to answer, I was standing up and speaking before, I don't know if the jury heard it, but – |
| [Trial Court:] | -- What you want him to say is he didn't think he needed a polygraph because he believed him. That is totally improper, and it shouldn't have been asked. It's as simple as that. |
| [Defense Counsel:] | And, and to evaluate his performance in other words, Judge. |
| [Trial Court:] | Sure. |
| [Defense Counsel:] | So even if that's the end of the questioning, Judge, the jury is left with the impression that there's no need for the polygraph, he's fine, he's telling us the truth about everything, we believe him.

And, Judge, I couldn't get into whether or not he'd taken a polygraph and failed the polygraph. Judge, the -- should be true. I think it's impermissibly tainted at this point, Judge. And I think you have to mistry the case. |
| [Prosecutor:] | What we have, Judge, is a situation where the evidence at this point is that he -- |

| [Trial Court:] | -- Why did you ask him? Why did you ask him? After I sustained the objection, why did you ask him about the polygraph? |
| --- | --- |
| [Prosecutor:] | I was moving into what I thought -- |
| [Trial Court:] | -- You were moving in because you wanted to make the impression he didn't think he needed to test him because he was telling the truth. Now, isn't that correct? |
| [Prosecutor:] | Based on his other information. |
| [Trial Court:] | That is absolutely improper. Now, I'm going to tell you something now, [Commonwealth's Attorney]. You keep him [Prosecutor] under control or get him out of this case. |
| [Comm.'s Attorney:] | Yes, sir. |
| [Trial Court:] | This is the second time, and you're skirting the issues, and you're trying to get in the back door what you can't get in the front door. I am not going to put up with it. |

The trial court then denied the motion for a mistrial and immediately instructed the jury that any questioning to Agent Miller "concerning anything to do with a polygraph is improper questioning. It should not be here. You should disregard any questions or answers concerning anything to do about a polygraph."

This appeal follows.

ANALYSIS

Appellant argues that the prosecutor's series of questions should have resulted in a mistrial. Essentially, he contends the references to the polygraph suggested Leonel was willing to take the test, thereby allowing the jury to infer Leonel was a credible witness. Appellant maintains that this improper questioning "bolstered" Leonel's credibility. Appellant focuses, in particular, on the prosecutor's persistence in asking Agent Miller about the polygraph after the

trial court sustained appellant's objections and after the trial court admonished the prosecutor to abandon that line of questioning.

"A trial court exercises its discretion when it determines whether it should grant a motion for mistrial. Whether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993). "Thus, a trial court's denial of a motion for a mistrial will not be reversed on appeal unless there exists a manifest probability as a matter of law that the improper evidence prejudiced the accused." Mills v. Commonwealth, 24 Va. App. 415, 420, 482 S.E.2d 860, 862 (1997).

"Following the improper admission of evidence, juries are presumed to follow a court's 'prompt, explicit, and curative instructions' to disregard the evidence." Bennett v. Commonwealth, 29 Va. App. 261, 274, 511 S.E.2d 439, 445 (1999) (quoting Beavers, 245 Va. at 280, 427 S.E.2d at 420).

> As an exception to this rule, "the admission of incompetent evidence is reversible error notwithstanding the fact that the trial court, after its admission, instructed the jury to disregard it, if such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict."

Id. (quoting Mills, 24 Va. App. at 420, 482 S.E.2d at 862).

Before determining whether the failure to declare a mistrial was prejudicial error, we first must decide if the series of questions addressed to Agent Miller about the polygraph was improper.

"Because a polygraph examination has no proper evidentiary use, neither the results of a polygraph, nor '[e]vidence of a person's willingness or unwillingness to submit to a polygraph' is admissible in court." Bennett, 29 Va. App. at 271, 511 S.E.2d at 444 (quoting Gray v. Graham, 231 Va. 1, 10, 341 S.E.2d 153, 157 (1986)) (other citation omitted). "Furthermore,

evidence concerning a polygraph is not admissible to establish the guilt or innocence of an accused or to impeach a witness' credibility." Id. (citing Robinson v. Commonwealth, 231 Va. 142, 155-56, 341 S.E.2d 159, 167 (1986)).

> In a long line of cases, spanning almost thirty years, [the Supreme Court of Virginia has] made clear that polygraph examinations are so thoroughly unreliable as to be of no proper evidentiary use whether they favor the accused, implicate the accused, or are agreed to by both parties. The point of these cases is that the lie-detector or polygraph has an aura of authority while being wholly unreliable.

Robinson, 231 Va. at 156, 341 S.E.2d at 167 (citations omitted). "The mention of polygraphs in the presence of the jury impermissibly suggests that there is a scientific way to find the truth where in reality, in our system of justice, the jury decides what is true and what is not." Id.

Based on these principles, any mention of the polygraph examination and its use as a tool to establish the credibility of Leonel was improper evidence and inadmissible at trial. However, the admission of improper evidence does not necessarily require the trial court to grant a mistrial; as noted above, where, as here, the trial court has issued a cautionary instruction to the jury to disregard the evidence, we will not reverse the trial court's decision to deny a motion for mistrial unless we find that "'such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict.'" Bennett, 29 Va. App. at 274, 511 S.E.2d at 445 (quoting Mills, 24 Va. App. at 420, 482 S.E.2d at 862).

"Whether a manifest probability exists that . . . improper evidence prejudiced the accused despite [a court's] cautionary instruction depends upon the nature of the incompetent evidence when considered in relation to the nature of the charges, the other evidence in the case, and [the] manner in which the prejudicial evidence was presented." Mills, 24 Va. App. at 420-21, 482 S.E.2d at 862-63.

> Additionally, a court's failure to take any action in response to an improper question is relevant to determining prejudice because the

> jury may infer from such inaction that the court approved of the impropriety. Lewis v. Commonwealth, 211 Va. 80, 84, 175 S.E.2d 236, 238 (1970) (finding the defendant suffered no prejudice from the improper admission of testimony and a statement by the prosecutor where the court expressly disapproved of the improper remarks with a cautionary instruction). . . . The number of references to an error is also relevant to our consideration of whether prejudice influenced the jury. Ward [v. Commonwealth], 205 Va. [564,] 574, 138 S.E.2d [293,] 300 [(1964)] ("In this instance, the first error was compounded by the second and it would be hard to blot the information from the minds of a jury.").

Bennett, 29 Va. App. at 274-75, 511 S.E.2d at 445. When considering these factors under the circumstances of this case, we cannot find that there was a manifest probability that the prosecutor's line of questioning so impressed the jury that it remained on their minds and influenced their verdict, notwithstanding the trial court's cautionary instruction.

While questioning Agent Miller, the prosecutor made a number of references to a polygraph examination. First, the prosecutor asked Agent Miller if Leonel entered into a plea agreement requiring Leonel to take a polygraph at the request of the government. Defense counsel did not object to this question, and evidence of the plea agreement and its contents were already before the jury, as the prosecutor had introduced it during direct examination of Leonel. The prosecutor then asked Agent Miller if the government had requested Leonel to take a polygraph test, and Agent Miller replied in the negative. Again, defense counsel raised no objection, and this information was already before the jury, as the same questions had been asked of Leonel on direct examination without objection from defense counsel.

The prosecutor then inquired whether the polygraph requirement was standard in all plea agreements. Agent Miller responded affirmatively, and defense counsel did not object. In response to the prosecutor's further questioning about the polygraph, Agent Miller explained that the government uses a polygraph examination as a method for determining the veracity of an

- 8 -

informant when the government suspects that the informant is "not telling the truth." Defense counsel did not object either to the prosecutor's question, or to Agent Miller's answer.

Thus, before any objection was raised by appellant, the jury had already heard testimony that Leonel's plea agreement contained a provision for polygraph examinations to be conducted at the request of the government, that the government used the polygraph examination to determine whether an informant was lying if they had reason to question the information they had been given, and that the government had never requested Leonel to take such an examination.

Defense counsel did not object until the prosecutor asked Agent Miller whether the fact that Leonel had not been asked to take a polygraph examination was "different in your experience dealing with other confidential informants." The trial court sustained the objection. Nevertheless, the prosecutor, undaunted, asked Agent Miller if polygraph results are admissible in court. The trial court, not allowing Agent Miller to answer the question, immediately intervened, saying, "Sustain the objection." The trial court admonished the prosecutor to "[g]et away from it." Again, undeterred, the prosecutor asked Agent Miller, "[t]he use you all make of that is just to evaluate the person's worth, is that correct?" Defense counsel objected. The trial court sustained the objection and sent the jury out. At this time, defense counsel moved for a mistrial.

This last question from the prosecutor about the polygraph, which prompted appellant's motion for mistrial, sought the exact information that had been volunteered earlier by Agent Miller, namely that the government used polygraph examinations to "prove or disprove" the information given by confidential informants when the government thought that an informant was "not telling the truth." Defense counsel did not object to the earlier exchange.

Thus, defense counsel raised only two objections to the prosecutor's questions seeking information that was not already before the jury without objection: first, the question regarding the admissibility of polygraph results and, second, the question regarding whether it was unusual in Agent Miller's experience for the government not to request a confidential informant to submit to a polygraph examination.

We must examine the nature of these questions when considered in relation to the charges, the other evidence in the case, and the manner in which the evidence was presented. Mills, 24 Va. App. at 420, 482 S.E.2d at 862. We also consider the number of references made to the improper evidence and the trial court's reaction to the improper questioning. Bennett, 29 Va. App. at 274, 511 S.E.2d at 445.

While we acknowledge that, under well-settled principles, it is improper to introduce any evidence regarding a polygraph examination at trial, we must consider the nature of this reference in terms of whether the trial court erred in failing to grant appellant's motion for a mistrial. The polygraph examination at issue here was one that was never performed on a key prosecution witness. This is not a case involving commentary on the willingness of a criminal defendant to take a polygraph examination, Barber v. Commonwealth, 206 Va. 241, 250-51, 142 S.E.2d 484, 491-92 (1965), or a case where the results of a polygraph examination are sought to be entered into evidence, Robinson, 231 Va. at 156, 341 S.E.2d at 167. While the evidence elicited here was still improper, clearly less prejudice accrued to appellant in the instant case than would have in either of the situations noted above.

The manner in which the prosecutor continued the questioning, despite the trial court's rulings and repeated admonitions, is more troublesome.[1] However, the trial court's reaction to

---

[1] Appellant cites Maxey v. Hubble, 238 Va. 607, 385 S.E.2d 593 (1989), for the proposition that the prosecutor's persistence in continuing the line of questioning after the trial court sustained objections and admonished the prosecutor is alone sufficient basis for a mistrial.

the prosecutor's improper questions is a circumstance that mitigates any finding of prejudice to appellant, as it clearly expressed to the jury that the trial court did not approve of the prosecutor's impropriety. Lewis, 211 Va. at 84, 175 S.E.2d at 238 (finding the defendant suffered no prejudice from the improper admission of testimony and a statement by the prosecutor where the court expressly disapproved of the improper remarks with a cautionary instruction).

---

The Supreme Court of Virginia in Maxey, a medical malpractice action, stated:

> The injured party's right to a new trial is especially strong where his opponent has persisted in an objectionable course of conduct after the trial judge has expressed disapproval of it, sustained an objection to it, or instructed the jury to disregard it. In that situation, an appellate court will presume that the prejudicial effect of the improper conduct was too strong to be removed by further admonitions or jury instructions.

Id. at 616, 385 S.E.2d at 597.

However, the nature of the "objectionable course of conduct" in Maxey is much more egregious than in the instant case. In Maxey, the trial court ruled, prior to trial, that opposing counsel could interview the plaintiff's treating physicians, some of whom were named as expert witnesses for the defense. Id. at 610, 985 S.E.2d at 594. Before trial, plaintiff's counsel sent a letter to all of plaintiff's treating physicians, advising them that testifying as experts on behalf of the defense could be viewed as a breach of their fiduciary duty to the plaintiff. Id. At trial, plaintiff's counsel objected to the testimony of the treating physicians as a violation of physician-patient privilege. Id. at 610-11, 985 S.E.2d at 594. The trial court overruled the objection and cautioned plaintiff's counsel not to get into "any ethical standards." Id. Nevertheless, plaintiff's counsel persisted in inquiring about medical ethics, even after the trial court had sustained two objections and issued a cautionary instruction to the jury. Id. at 611-13, 985 S.E.2d at 594-95. Additionally, plaintiff's counsel attempted repeatedly to discredit defendant's witnesses, from opening statements through closing arguments, by implying that these doctors perjured themselves as part of a "conspiracy of silence" among physicians designed to protect their colleagues. Id. at 613-14, 985 S.E.2d at 595-96. Plaintiff's counsel persisted in this theory despite the trial court's several admonitions to avoid this line of argument. Id.

The questioning here was brief in nature and time, and it was related to facts already before the jury. The proper analysis is whether, despite the trial court's cautionary instruction, the "'illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict,'" Bennett, 29 Va. App. at 274, 511 S.E.2d at 445 (quoting Mills, 24 Va. App. at 420, 482 S.E.2d at 862), not whether the prosecutor acted in "good faith or bad faith." While certainly such a consideration could factor into the overall analysis, it cannot form the sole basis for a mistrial, as appellant contends. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). Here, as in Brady, the analytical focus is not on the "punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." Id.

- 11 -

The questions and answers that appellant cites as grounds for a mistrial were merely duplicative of information that had already been elicited at trial. As noted above, through evidence already before them without objection, the jury knew Leonel had agreed to take a polygraph, but did not do so because the federal authorities had never requested it. The jury also knew that the polygraph would be employed to determine the credibility of their informants, but was not used on Leonel. From these facts alone the jury could have concluded that the federal authorities did not give Leonel a polygraph examination because they believed him to be a credible witness.[2] Yet, defense counsel never objected to this information when it was elicited on direct examination of Leonel and Agent Miller.

Perhaps the most persuasive factor mitigating against a finding of prejudice to appellant is the other evidence of appellant's guilt. Leonel's testimony was not the only evidence implicating appellant in the murder. Appellant's girlfriend at the time of the murder, Natalie, also testified that appellant had recounted details of the murder to her on the night the crime was committed. Natalie's testimony mirrored that of Leonel regarding the details of the murder, indicating that appellant had told both individuals the same story. The details that appellant divulged to these witnesses matched the evidence at the crime scene, including the location of the crime, the point of entry into the residence, the number and gender of the victims, the location where the bodies were recovered, the location of the gunshot wounds on the bodies of the victims, the caliber of the weapon used to commit the crimes, and the presence of, and approximate ages of, the children in the residence when these crimes were committed. These details also matched the date and time that an independent witness living near the crime scene heard gunshots. Detective McCune of the Richmond City Police Department testified that these

---

[2] It is also possible that the jury could have interpreted the federal government's failure to require Leonel to submit to a polygraph examination as the result of careless law enforcement efforts, particularly as this particular informant had been shown to be untrustworthy.

details had not been released to the public and that he had not disclosed these details to either witness when he interviewed them. Leonel and Natalie had approached police with information about the murders independently, approximately six months apart. The prosecution established that appellant had a motive for the murder, as he believed that the victims had participated in the stabbing of his cousin approximately two months before the murders.

Thus, taking into account the nature of the improper evidence when considered in relation to the charges, the other evidence in the case, the manner in which the improper evidence was presented, the number of references made to the improper evidence, and the trial court's reaction to the improper questioning, we cannot say that the improper evidence remained on the minds of the jurors and influenced their verdict. The trial court properly evaluated the prosecutor's questioning regarding the polygraph, considered its impact, and correctly concluded that the cautionary instruction was an adequate corrective measure. Thus, the trial court did not abuse its discretion in issuing a prompt curative instruction instead of granting a mistrial.

<u>CONCLUSION</u>

We find that, under the particular facts of this case, the trial court did not err in denying appellant's motion for a mistrial in response to the prosecutor's improper line of questioning about a polygraph examination. We affirm the trial court's decision and appellant's convictions.

<u>Affirmed.</u>