COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and White
Argued at Norfolk, Virginia

UNPUBLISHED

JARMAR MUSTAFA JONES

MEMORANDUM OPINION[*] BY
v.      Record No. 0137-23-1          JUDGE KIMBERLEY SLAYTON WHITE
                                              JULY 23, 2024
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Jarmar Mustafa Jones appeals his conviction, following a jury trial, for possession of a

firearm by a convicted violent felon, in violation of Code § 18.2-308.2.[1]  On appeal, Jones asserts

that the trial court erred when it denied his motion to suppress and his motion for a mistrial.  Jones

further argues that the evidence was insufficient to prove that the instrument found during the traffic

stop was a firearm within the definition of Code § 18.2-308.2.  For the following reasons, we

disagree and affirm the conviction.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jones was also indicted for possession of more than one-half ounce but less than five
pounds of marijuana.  His charges were severed from each other, and Jones was tried on his
firearm charge first.  After Jones was convicted, the Commonwealth nolle prossed his possession of
marijuana with the intent to distribute charge.

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

## I.  Evidence at the Suppression Hearing

On April 15, 2020, Norfolk narcotics and vice Investigators James Natiello and Luketic, initiated a traffic stop of a vehicle after observing it speed through a stop sign without stopping.[2] Jones was the driver and sole occupant of the vehicle.  Upon request, Jones provided his license and vehicle registration.

The investigators quickly determined that Jones was properly licensed and the vehicle was properly registered.  Because Investigator Natiello did not have his summons book and Jones had been polite and cooperative, he decided to give Jones a verbal warning.  The subject of the warning would have addressed Jones's running of the stop sign.  Investigator Natiello approached Jones's driver's side door with Jones's documents in hand but, before returning Jones's documents and before issuing him the warning, asked Jones if there was anything illegal in the vehicle.  Jones immediately and without hesitation[3] responded that there was marijuana in the car, and he was promptly removed from the car by Natiello.

Investigator Natiello stated that his question concerned the presence of narcotics or weapons in the vehicle.  He did not suspect Jones of any illegal activity when he made his inquiry, but routinely asked that question at the end of every traffic stop.  Investigator Natiello stated that the

---

[2] Investigator Luketic's full name was never disclosed at the suppression hearing or at trial.

[3] A review of the video corroborates the Commonwealth's assertion that the question and response lasted three seconds.

amount of time necessary for him to give Jones his documents back was the same amount of time it took him to inquire about the presence of anything illegal in the vehicle. He also stated that it would have taken Jones longer to store his license and registration, put his car in drive, and pull off than the moment it took for him to reply to the investigator's question.

A recording from Investigator Natiello's body worn camera was then played for the court.[4] The footage showed that Investigator Natiello approached the driver's side of Jones's vehicle while Investigator Luketic approached the passenger side; Jones produced his license and vehicle registration. The officers then determined that Jones was licensed and that the vehicle was properly registered. Upon returning to Jones's driver's side window, Investigator Natiello asked Jones, "you got nothing in the car, right?" Jones responded, "I've got some weed on me."

The officers asked Jones to step out of the car, and he complied. Jones then admitted that he also had an unregistered firearm in the vehicle, that he did not have a concealed weapons permit, and that he was a felon. Jones said that the gun was under the driver's seat with bullets in the magazine but no bullet in the chamber. Investigator Natiello's body worn camera footage showed his discovery of the marijuana, the firearm under the driver's seat, and his rendering the firearm safe.

Prior to trial, Jones moved to suppress the evidence seized from his vehicle. The trial court denied this motion. Jones then moved to sever the firearm charge from the distribution of marijuana charge. This motion was granted.

Before ruling on the motion to suppress evidence, the trial court made certain factual findings and memorialized them in a letter opinion. The trial court found that Investigator Natiello's question concerned the presence of narcotics and weapons in the vehicle and that the

_____

[4] It is unclear from the record what portion of the 30-minute video was played for the court. The entire video, however, was entered into evidence without objection.

- 3 -

investigator "routinely asks drivers if there is anything illegal in their vehicle at the conclusion of traffic stops." Although the "the record [was] unclear whether Investigator Natiello asked about the contents of Jones's vehicle while handing Jones's documents back or if he paused for a few seconds to ask the question," the trial court noted Jones definitively replied that he had marijuana in the car and eventually volunteered that there was a firearm in the vehicle as well.

The trial court denied Jones's motion to suppress on two grounds. The trial court opined that although Investigator Natiello's inquiry occurred at the end of the traffic stop rather than at the beginning, the question was nevertheless "relate[d] to highway safety and the responsible operation of vehicles on the road." Consequently, the trial court found, "Investigator Natiello's question to Jones was within the mission of the traffic stop." In the alternative, the trial court found that, "Investigator Natiello was continuing to complete the required actions of the traffic stop when he asked about the contents of Jones's car" and that the investigator did not impermissibly extend the stop.

## II. Trial Proceedings

At Jones's request before trial, the trial court prohibited the Commonwealth from referencing the marijuana recovered from his vehicle as the marijuana charge had been severed from the firearm charge. At trial, Investigator Natiello's testimony mirrored his testimony at the suppression hearing concerning the stop, the investigation of Jones's driver's license and registration, and the officer's return to Jones's vehicle with his documents.

The following exchange then occurred between the prosecutor and Investigator Natiello:

Q.     And when you were about to hand the defendant his license and registration back, as you did this, what did you say to him?

A.     I asked him if there was anything in the vehicle.

Q.     Did he say anything back to you?

A.      He did.

Q.      What did he tell you?

A.      He said he had marijuana.

The trial court immediately informed the jury that the mention of marijuana was irrelevant and instructed the jury to "disregard any mention of marijuana."

The Commonwealth then moved to enter the entirety of Investigator Natiello's body worn camera footage into evidence. Jones objected and asserted that the recording contained objectionable portions that referenced marijuana. The trial court admitted the entire body worn camera video into evidence except those "portions of the video that mention weed or marijuana," and instructed the Commonwealth "to play only the not objected to portions of the video."

After the video had played for a period of time, the trial court requested that the video be paused. The trial court then explained to the jury that although the video referenced marijuana, "[t]hat has nothing to do with this case, and you should totally disregard that. It has nothing to do with this case at all. It's in the video, but the issue before you is just about whether there is a gun in the car or not."

The video restarted and, after another segment played, Jones objected. The trial court stopped the video, excused the jury, and heard Jones's motion for a mistral based upon repeated violations of the trial court's ruling on the reference to marijuana. Jones noted that the court's evidentiary ruling had been violated twice. He asserted that the multiple references to marijuana were prejudicial as he was not currently being tried for his marijuana possession and possession of any amount of marijuana was illegal at the time of the traffic stop. Jones then moved for a mistrial, noting that despite the clear ruling from the court, the Commonwealth violated the order "twice back-to-back." Although the trial court took the motion for mistrial under advisement and admonished the prosecutor to refrain from further mention of marijuana, it provided no further

instruction to the jury concerning the second reference to marijuana in Jones's possession nor did it instruct the jury that the matter had been stricken. The Commonwealth argued that the presence of marijuana was relevant to show why Jones would carry a firearm.

The trial court acknowledged that marijuana had been mentioned multiple times but noted that, at the time of trial, it was legal to possesses a certain amount of marijuana. The court opined that "if we're able to contain [the evidence] to no further mention [of marijuana] and it's not an illegal amount of marijuana, is there a problem?" The trial court then took the matter under advisement.

When the jury returned, Investigator Natiello testified that in response to his inquiries Jones eventually admitted that he had a gun in the vehicle. Investigator Natiello subsequently searched Jones's vehicle and recovered a gun under the driver's seat, which was within Jones's reach when he was driving the car. Investigator Natiello "vouchered [the instrument], took it to property and evidence and then took it to the state lab." When shown the recovered instrument in court and asked if "this [is] the firearm you recovered" from Jones's vehicle, Investigator Natiello stated, "[t]hat's the gun. There was also a magazine involved." The instrument was not entered into evidence. The Commonwealth admitted Jones's previous violent felony conviction into evidence and rested.

At the close of all the evidence, Jones moved to strike the charge. The trial court denied Jones's motion to strike and his motion for a mistrial. After deliberation, the jury convicted Jones of the firearm charge and the trial court sentenced him to five years of incarceration. Jones appeals.

ANALYSIS

I. Motion to Suppress

Jones argues that the trial court erred when it denied his motion to suppress. The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The

appellant bears the burden of establishing that reversible error occurred. *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008). At this juncture, the Court considers the evidence in the light most favorable to the Commonwealth and affords it the benefit of all inferences fairly deducible from that evidence. *Hill v. Commonwealth*, 297 Va. 804, 808 (2019). Moreover, our review includes evidence presented at both the suppression hearing and the trial. *Id.*; *Williams v. Commonwealth*, 71 Va. App. 462, 474-75 (2020). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." *King v. Commonwealth*, 49 Va. App. 717, 721 (2006).

The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Appropriate matters of police inquiry include checking the driver's license and examining proof of the automobile's registration, inspection, and insurance. *Id.* at 355-56.

While diligently pursuing the purpose of a traffic stop, officers also may engage in other investigative techniques unrelated to the underlying traffic infraction or the safety of the officers. *Id.* at 354 (citing *Arizona v. Johnson*, 555 U.S. 323, 327-28 (2009); *Caballes*, 543 U.S. at 406). Such unrelated activity is permitted only as long as it does not prolong the traffic stop. *Johnson*, 555 U.S. at 333. The "interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonable required to complete that mission." *Caballes*, 543 U.S. at 407.

This Court, interpreting *Rodriguez*, has concluded that "the Supreme Court specifically rejected" the concept that "a *de minimis*" delay or extension of a stop did not violate a citizen's constitutional rights. *Matthews v. Commonwealth*, 65 Va. App. 334, 345 (2015). Tasks that may

exceed the mission of the stop include questioning the motorist about his criminal history, his tattoos, and waiting for the arrival of "a K-9 unit to conduct a dog sniff." *Id.*

Jones claims that Investigator Natiello unlawfully prolonged the traffic stop in violation of his Fourth Amendment rights when the officer, asked "you got nothing in the car, right?" Jones notes that the investigator "had completed all the record checks necessary for the stop," and intended to give Jones only a verbal warning. Rather than "hand [Jones] his paperwork and allow him to depart," Investigator Natiello withheld his documents and asked the challenged question. Jones asserts that the investigator's question was not designed to ascertain information related to officer or traffic safety but rather was a "fishing expedition." Because Investigator Natiello pursued a separate investigation unsupported by any reasonable articulable suspicion, Jones claims that the trial court erred in refusing to suppress the evidence.

While this Court has held that even a de minimus delay can lead a traffic stop to be unconstitutional, the investigator's question in this case occurred simultaneously with the officer's approach to return Jones's documents to him. *Matthews*, 65 Va. App. at 345. The trial court made a factual finding that Investigator Natiello's question lasted the same amount of time that it would have taken to simply hand the documents back to Jones. In addition, the question occurred before the investigator addressed Jones's running of the stop sign, informed Jones that he would not be cited for the traffic violation, and issued a warning to Jones. The "tasks tied to the traffic infraction" had not been completed. *Rodriguez*, 575 U.S. at 353. The unrelated question "you got nothing in the car, right?" did not prolong the stop. For that reason, the trial court did not err in denying the motion to suppress.[5]

---

[5] Because the trial court decided the suppression issue on alternative grounds, we do not decide the issue of whether the question was related to highway safety. "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available."

## II. Motion for Mistrial

Jones asserted that the trial court erred when it denied his motion for a mistrial after the prosecutor introduced evidence, in violation of the court's evidentiary ruling, that referred to the marijuana found in his vehicle. "A trial court exercises its discretion when it determines whether it should grant a motion for mistrial. Whether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." *Fowlkes v. Commonwealth*, 52 Va. App. 241, 248 (2008) (quoting *Beavers v. Commonwealth*, 245 Va. 268, 280 (1993)). On appeal, the Court "reviews the denial of a motion for mistrial under the abuse of discretion standard of review." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020).

"Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial." *Wright v. Commonwealth*, 52 Va. App. 690, 707 (2008) (quoting *Perez v. Commonwealth*, 40 Va. App. 648, 654 (2003)). A manifest probability of prejudice arises when the testimony is "so impressive that it probably remained on the minds of the jury and influenced their verdict." *Terry v. Commonwealth*, 5 Va. App. 167, 169 (1987) (quoting *Coffey v. Commonwealth*, 188 Va. 629, 636 (1949)). "As a general rule, criminal judgments will not be reversed for 'the improper admission of evidence that a court subsequently directs a jury to disregard because juries are presumed to follow prompt, explicit, and curative instructions.'" *Smith v. Commonwealth*, 48 Va. App. 521, 531 (2006) (quoting *Elliott v. Commonwealth*, 267 Va. 396, 418 (2004)).

Here, the trial court promptly and explicitly instructed the jury to disregard the mention of marijuana entirely, including when weighing the evidence. The trial court instructed the jury on two different occasions. The trial court first instructed them "the mention of marijuana is

---

*Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)).

irrelevant. The jury will disregard any mention of marijuana." When the prosecutor played a portion of the body worn camera footage where marijuana was mentioned, the trial court stopped the video and reminded the jury that marijuana "has nothing to do with this case, and you should totally disregard that." Additionally, the court stated, "[i]t's in the video, but the issue before you is just about whether there is a gun in the car or not." Although the trial court did not offer a third instruction to the jury when the prosecutor played another segment of the video, the trial court provided another cautionary instruction, to which Jones agreed, to the jury at the conclusion of all the evidence.[6]

The record contains no indication that the jury failed to follow the trial court's numerous cautionary instructions. Jones has demonstrated no manifest probability that he was prejudiced by the references to marijuana in the vehicle. "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts yet still remain entirely reasonable." *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). Accordingly, the trial court did not abuse its discretion in denying Jones's motion for a mistrial as the court cured any prejudice by instructing the jury to disregard any mention of marijuana.

### III. Motion to Strike

Finally, Jones argues that the trial court erred when it denied his motion to strike the charge because the evidence did not prove that the instrument recovered from the car was a firearm as

---

[6] Instruction 5 instructed the jury that it "must not consider any matter that was rejected or stricken by the Court. It is not evidence and should be disregarded."

contemplated by Code § 18.2-308.2.[7]  "A motion to strike challenges whether the evidence is sufficient to submit the case to the jury."  *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)).  As a result, Jones's argument raises the question of whether the evidence adduced sufficiently presented "a *prima facie* case [of possession of a firearm by a convicted violent felon] for consideration by the" jury.  *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

"What the elements of the offense are is a question of law that we review de novo."  *Lawlor*, 285 Va. at 223.  "Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong."  *Id.*  "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom."  *Id.*  "After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*  "In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial."  *Id.*

"It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm."  Code § 18.2-308.2(A).  The Supreme Court has held that the term "firearm" under Code § 18.2-308.2 means "any instrument designed, made, and intended to fire or expel a projectile by means of an explosion."  *Armstrong v. Commonwealth*, 263 Va. 573, 583 (2002).  "[T]o sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that [Jones] . . . possessed an

---

[7] Jones does not challenge the Commonwealth's proof of his status as a violent felon or that he constructively possessed the instrument recovered from his vehicle.  Instead, he argues that the Commonwealth did not establish that the instrument he possessed was, in fact, a firearm.

instrument which was designed, made, and intended to expel a projectile by means of an explosion. *Id.* at 584. "It is not necessary that the Commonwealth prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Jones v. Commonwealth*, 277 Va. 171, 183 (2009) (quoting *Armstrong*, 263 Va. at 583). "Whether an object is a firearm . . . [is a] question[] of fact." *Barlow v. Commonwealth*, 61 Va. App. 668, 670 (2013).

Considered in the light most favorable to the Commonwealth, the evidence was sufficient for a reasonable fact finder to conclude that the instrument recovered was designed to expel a projectile by means of an explosion.

Investigator Natiello testified that he found a firearm under the driver's seat of Jones's car. Footage from Investigator Natiello's body worn camera depicted him finding the weapon and rendering it safe. When the instrument was displayed for the jury and Investigator Natiello at trial, the officer admitted that it was the same item he recovered from Jones's vehicle and noted that he found a magazine in it. Jones admitted to Investigator Natiello that he had a gun in the car. Moreover, Jones said there were bullets in the gun's magazine, but no bullets in the chamber. If the instrument in question was not designed to expel projectiles by explosion, there would have been no purpose for Jones to load it with bullets.

From these facts and circumstances, a reasonable fact finder could conclude beyond a reasonable doubt that Jones possessed an instrument designed, made, and intended to fire a projectile by an explosion. Thus, the trial court did not err in denying Jones's motion to strike the firearm charge.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

- 12 -